BLAKEMAN, APPELLANT, *v.* HENDRIX, APPELLEE.

[Cite as Blakeman v. Hendrix, 14 Ohio App. 2d 141.]

(No. 3191—Decided December 20, 1967.)

*Messrs. Pickrel, Schaeffer & Ebeling* and *Mr. Wilbur S. Lang,* for appellant.

*Messrs. Curtner, Selva, Parkin & Seller,* for appellee.

KERNS, J. This action arose from a collision on August 12, 1959, between a motorcycle being driven by the plaintiff, appellant herein, Thomas Blakeman, and a truck driven by Rex Robertson.

At the time of trial, on April 10, 1967, two defendants remained in the case, Rex Robertson and Edward E. Hendrix, the appellee herein.

Robertson was the alleged tort-feasor, whereas the theory of the case against Hendrix was based upon the doctrine of *respondeat superior.*

At the conclusion of Blakeman's case, the trial court directed a verdict for Hendrix.

The present appeal stems from the judgment entered upon the directed verdict in favor of the defendant, Edward E. Hendrix, and against the plaintiff, Thomas Blakeman.

The question thus presented in this appeal is whether the evidence, when construed most favorably to the plaintiff, is such as to preclude a reasonable finding that a *respondeat superior* relationship existed between Robertson and Hendrix at the time of the collision. In other words, could reasonable minds differ upon this issue?

The evidence discloses that Hendrix had an oral contract to furnish trucks for the hauling of sand, gravel and asphalt to and from the Central Asphalt Plant on Monument Avenue. For this purpose, he had his own trucks and drivers.

However, in pursuance of the contract, Hendrix sometimes procured the services of other truck operators, one of whom was a person named Grubbs who owned two trucks, one of which was involved in the collision in the present case. The driver of the truck was Rex Robertson, Grubbs' brother-in-law, who was selected by and drove the truck part-time for Grubbs in addition to working a regular shift at Delco Products. Grubbs was paid on a tonnage basis for the use of the truck and driver, and he was responsible for the complete maintenance and operating costs of the truck and driver.

Robertson testified that he usually stopped hauling around noon because he was working the swing shift at Delco. He testified further that he did not necessarily have to "show up," but that Hendrix would probably get another truck and driver if he did not. When the truck was not in operation, it was parked on another trucker's lot selected by Grubbs. It also appears from the evidence that Grubbs' trucks had been used by other contractors from time to time under an arrangement similar to the one existing between Grubbs and Hendrix.

Robertson had no set route to follow when hauling for Hendrix, but Hendrix did tell him when to report to haul, where to pick up the material hauled, and where to deliver it after it had been processed at Central Asphalt Company.

Although the law in cases of this kind has produced very little misunderstanding, the application of the law to particular factual situations has been the source of considerable difficulty. Nonetheless, certain guiding principles are worthy of mention. In the case of *Councell* v. *Douglas,* 163 Ohio St. 292, the second paragraph of the syllabus provides as follows:

"The rule of *respondeat superior* only arises out of the relationship of superior and subordinate and ceases when that relationship ceases to exist; and the reason of it is to

be traced to the power of control and direction, which the superior has a right to exercise, and which, for the safety of others, he is bound to exercise, over the acts of his subordinates. (Paragraph four of the syllabus of *Clark* v. *Fry*, 8 Ohio St. 358, approved and followed.)''

Another test frequently applied is set forth in *Miller* v. *Metropolitan Life Ins. Co.*, 134 Ohio St. 289, at 291:

''The fundamental rule generally recognized is that the doctrine of *respondeat superior* is applicable to the relation of master and servant or of principal and agent, but not to that of employer and independent contractor. * * *.

''The relation of principal and agent or master and servant is distinguished from the relation of employer and independent contractor by the following test: Did the employer retain control, or the right to control, the mode and manner of doing the work contracted for? If he did, the relation is that of principal and agent or master and servant. If he did not but is interested merely in the ultimate result to be accomplished, the relation is that of employer and independent contractor. * * *''

In the case of *Behner* v. *Industrial Commission*, 154 Ohio St. 433, the court held, in the second paragraph of the syllabus:

''A trucker who contracts * * * to transport * * * freight by means of his own truck and equipment, serviced and maintained by him, to a designated destination for a fixed compensation, and who has the right to choose the route to be taken and to control the details of the transportation enterprise, including times and hours of employment, is an 'independent contractor' * * *.''

In the case of *N. Y., C. & St. Louis Rd. Co.* v. *Heffner Const. Co.*, 9 Ohio App. 2d 174, which has many characteristics similar to those of the present case, the court refers to *Hughes* v. *Railway Co.*, 39 Ohio St. 461, which provides, in the fifth paragraph of the syllabus:

''When an employer retains control over the mode and manner of doing a specified portion of the work only, and an injury results to a third person from the doing of some other portions of the work, the contractor alone is liable.''

In the case of *Babbitt* v. *Say, Admr.*, 120 Ohio St. 177,

the court held as follows, in the third paragraph of the syllabus:

"The rule of *respondeat superior* rests on the power which the superior has a right to exercise * * *. * * * the power does not ordinarily exist where there is no right of selection or discharge of such subordinate."

A fair analysis of the evidence in the present case shows that Robertson was selected by and working for Grubbs at the time of the collision. And although Hendrix could have removed the truck and its driver from his operation as a unit, he had no authority to remove or discharge Robertson without reference to the truck he was driving. The right to remove Robertson while retaining the use and control of the truck rested solely with Grubbs.

As a practical matter, every legal relationship involves some communicative direction and control. And in the present case, the driver necessarily had to be told where to secure the aggregates, where to bring it for processing, and where to take it after it was processed. However, these conditions alone do not establish a master-servant relationship. Here, the driver of the truck admitted that he was working on a "load to load basis," could hire out to anyone for hauling purposes, and had no regular schedule.

Generally, the evidence in this case reflects an independence on the part of the driver, Robertson, and his immediate superior, Grubbs, which is inconsistent with a master-servant relationship between Hendrix and Robertson.

After reviewing the evidence, and in consideration of all inferences reasonably deducible therefrom, we are satisfied that Hendrix had no ties on Robertson and did not directly or indirectly control the mode and manner of operation of Grubbs' truck at the time of the collision.

The judgment of the trial court will, therefore, be affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and SHERER, J., concur.