**Mary J. TAYLOR, et al., Plaintiffs,**

v.

**CHECKRITE, LTD., Defendant.**

**No. C–3–82–608.**

United States District Court, S.D. Ohio, W.D.

Jan. 13, 1986.

## DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS

RICE, District Judge.

This case is presently before the Court on Defendant's Motion to Dismiss (Doc. # 4), which the Court has ruled it will treat as a motion for summary judgment. *See* Entry Deferring Ruling on Defendant's Motion to Dismiss (Doc. # 7). The Court must decide whether, for purpose of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692 o, Defendant's franchisee was its agent. If the Court finds that the franchisee was Defendant's agent, then Plaintiffs' Complaint states a claim upon which relief can be granted, and the Court has personal jurisdiction over the Defendant. If the Court finds that the franchisee was not an agent of the Defendant, then this action must be dismissed.

The events surrounding this action, as alleged by Plaintiffs, began when Plaintiff Mary J. Taylor wrote a check to an Imperial Foodtown Store in the amount of $20.00. The check was returned to the Imperial Foodtown Store by the payor bank, Third National Bank, because of insufficient funds in Mrs. Taylor's account. Imperial Foodtown submitted the check to Defend-

ant's franchisee for collection. The franchisee informed Mrs. Taylor that she was required to pay the franchisee $29.00: $20.00 on the original check and $9.00 as a collection fee. The notice also indicated that if Plaintiff failed to pay the $29.00 to franchisee, her name might appear in the CheckRite Bulletin and thereby affect her check-cashing privileges. Plaintiff, however, paid $20.00 directly to the Imperial Foodtown Store at which she had originally written the check. She was then told by the franchisee over the telephone that if she failed to pay the $9.00 fee, her name would appear in the CheckRite Bulletin. Plaintiff, upon this conversation, sent to the franchisee a notification of dispute and statement of dispute pursuant to the Fair Credit Reporting Act, but the franchisee failed to disclose the statement of dispute in the CheckRite Bulletin. In addition, although Stephen Taylor was informed by franchisee on July 23, 1982, that the $9.00 fee had been waived, Mary Taylor's name remained in the CheckRite Bulletin dated September 1, 1982, and on September 15, 1982, she was refused acceptance of a personal check by Elder-Beerman Stores, Inc., based upon the listing in the CheckRite Bulletin.

Under the Fair Credit Reporting Act, a person or organization that falls within the definition of "consumer reporting agency" must in cases of disputes as to the accuracy of a report, publish a statement of the dispute supplied by the consumer. 15 U.S.C. § 1681. Under the Fair Debt Collection Practices Act, a person or organization that falls within the definition of "debt collector" is limited in the procedures it may use in attempting collection of the debt. 15 U.S.C. §§ 1692b–1692g. Defendant, at present, has not argued that the franchisee does not fall within the definitions of debt collector and consumer reporting agency. Rather, Defendant argues that because the franchisee is not its agent, it is neither a debt collector nor a consumer reporting agency under these statutes.[1]

Plaintiff has the burden of proof on the issue of whether the franchisee was Defendant's agent. *See Gardner Plumbing, Inc. v. Cottrill,* 44 Ohio St.2d 111, 338 N.E.2d 757 (1975); *Petty v. First National Bank of Akron,* 50 Ohio App.2d 365, 363 N.E.2d 599 (1976). However, in the present action any agency relationship between the Defendant and the franchisee would be evidenced by the contract between them (Exhibit attached to Doc. # 4) as interpreted in light of the CheckRite Procedure Manual (Exhibit attached to Doc. # 14).

In determining whether an agency relationship exists under Ohio law,[2] the Court first notes that the existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them. *See Arnson v. General Motors Corp.,* 377 F.Supp. 209, 212–14 (N.D. Ohio 1974) (finding no agency, but basing analysis on lack of a right of control as demonstrated by uncontradicted facts). The Court must scrutinize the relationship between persons who are franchisor-franchisee just as it would scrutinize any relationship in determining whether an agency relationship exists. The central factor under Ohio law in determining whether an agency relationship exists is the right of control vested in the principal. *See Priess*

---

**1.** It is not clear to the Court that Defendant was not a consumer reporting agency and/or a debt collector under the statutes even if the franchisee was not its agent. Neither party has addressed this issue, and because the record is not developed on the issue of what functions Defendant actually performs, the Court will not address this possible basis of liability at this time.

**2.** The Court applies Ohio law rather than federal common law to this action because there is no clear indication Congress sought to replace state agency law with federal law in the area of consumer credit regulation or that there is an overwhelming need for a single national definition of agent for the purpose of these statutes. *See Burks v. Lasker,* 441 U.S. 471, 476–78, 99 S.Ct. 1831, 1836–37, 60 L.Ed.2d 404 (1979); *see also Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981). In any case, Ohio law and federal common law are identical in all relevant aspects.

*v. Fisherfolk,* 535 F.Supp. 1271, 1279 (S.D. Ohio 1982) ("The most important element in determining whether an agency exists in the presence of some control over the conduct of the agent."); *Arnson,* 377 F.Supp. at 213; *Griffith v. Rutledge,* 110 Ohio App. 301, 304, 169 N.E.2d 464 (1960) ("[T]he existence of the relationship of principal and agent depends, not upon any exercise of control at the moment, but upon the right of control."); *see also* Note, *Theories of Liability for Retail Franchisors: A Theme and Four Variations,* 39 Md.L. Rev. 264, 267 (1979) ("Because a franchise is something of a hybrid business form, resembling both an association of independent businessmen and a company-owned chain, the primary problem in ascertaining franchise liability has been fitting the franchiser-franchisee relationship into one of the two traditional categories of agency law, principal-independent contractor or master-servant.... The central question in the courts' analysis has been the extent of control exercised by the franchisor over the franchise operations....").

In determining whether Defendant had a right of control over the franchisee in the present action, the Court must first examine the contract between the two. That contract (Exhibit attached to Doc. # 4) provides in part:

> In order to protect the reputation and goodwill associated with the mark "CHECKRITE", and to maintain uniform standards of operation, Franchisee shall conduct its franchise in strict accordance with Franchisor's Procedure Manual.

Contract at 4. The contract in two places provides:

> Franchisor or its agent shall at all reasonable times have the right to entry and inspection of Franchisee's premises, and to observe the manner in which Franchisee is rendering its services, to confer with Franchisee's employees and customers, and to select products and services for testing and evaluation in order to make certain that they are satisfactory.

*Id.* at 4 and 5. The contract also controls who the franchisee may purchase supplies from:

> Franchisee shall purchase all supplies and materials required for the operation of the CHECK RITE franchise licensed from suppliers designated by Franchisor or from such other suppliers who shall meet all of Franchisor's specifications and standards as to quality, composition, finish, appearance, and service.

*Id.* at 5. Further, the franchisee must implement any modification of the system in its operations:

> Franchisee recognizes that from time to time Franchisor may improve or modify the system presently identified by the mark CHECK RITE, including the adoption and use of new or modified trade name, trademarks, service marks or copyrighted materials, or new techniques, and that upon prior written notice from Franchisor, Franchisee will use and display for the purpose of this agreement any such changes in the system, including new or modified trade names, trade-marks, service marks or copyrighted materials, or new techniques, as if they were part of this agreement at the time of execution thereof. Franchisee will make such expenditures as such changes or modifications in the system may reasonably require, and do so within a reasonable time.

*Id.*

■ Examining these contract provisions in light of the Procedure Manual (Exhibit attached to Doc. # 14), the Court must conclude that Defendant has such a right of control over the franchisee as to make that franchisee its agent in regard to the activities complained of in this lawsuit. The Procedure Manual provides very detailed, step-by-step directions to the franchisee in carrying out its business operations, including setting up new accounts for merchants, member billing, file set-up, receiving mail, check processing, bookkeeping procedures, and preparing the computer listing sheet for the CheckRite Bulletin. The franchisee is given virtually

no discretion in performing these operations. Most importantly for purposes of this lawsuit, the franchisee under the Manual has no discretion in the practices underlying the allegations of Plaintiffs' Complaint. For example, Plaintiffs' Complaint alleges Defendant failed to publish a statement of dispute regarding the check written to the Imperial Foodtown Store. (Doc. #1 at ¶¶ 8–13). The Manual, however, in providing step-by-step instructions for preparation of the computer listing sheet, does not permit the inclusion of a statement of dispute in this report. Thus, the franchisee, who must follow Defendant's Manual, could not include a statement of dispute in the CheckRite Bulletin. Given such restrictions, the Court must find as a matter of law that Defendant had a right of control over the franchisee, and accordingly that Plaintiffs have shown that the franchisee was Defendant's agent.

This finding of possible agency relationship is not inconsistent with the cases cited by Defendant in support of its motion. Defendant argues that the Court should look to *New York, Chicago & St. Louis Railroad Co. v. Heffner Construction Co.*, 9 Ohio App.2d 174, 223 N.E.2d 649 (1967), and *Blakeman v. Hendrix*, 14 Ohio App.2d 141, 237 N.E. 334 (1967), for standards in determining when a right of control exists. However, these cases stand for the rule that "[w]hen an employer retains control over the mode and manner of doing a specified portion of work only, and an injury results to a third person from the doing of some other portions of the work, the contractor alone is liable." *Blakeman*, 14 Ohio App.2d at 143, 237 N.E.2d at 336 (quoting *Hughes v. Cincinnati & S. Railway Co.*, 39 Ohio St. 461 (1883).) As noted above, the evidence in this case indicates that the right of control held by Defendant over the franchisee was specifically in the areas of operation relevant to Plaintiffs' claims.

Therefore, because Plaintiffs have shown the franchisee to be Defendant's agent, the Court finds that Plaintiffs have stated a claim upon which relief could be granted and that the Court has personal jurisdiction over the Defendant. Accordingly, Defendant's Motion to Dismiss is overruled.

A telephone conference call will be convened at 4:15 p.m. on Friday, January 24, 1986, in order to set a trial date and other dates leading to disposition of this lawsuit.