OPINION
Plaintiff-appellants Abby Hamlin (now Fogt) and Mary Carter appeal from a summary judgment rendered by the Miami County Court of Common Pleas. The trial court found that the plaintiffs failed to establish the existence of a genuine issue of material fact with regard to whether defendant-appellee Motel 6 was liable to them for sexual harassment they allegedly suffered while employed by its franchisee.
Fogt and Carter contend that Motel 6 and its franchisee enjoyed a principal-agent relationship, and that Motel 6 was therefore responsible for the acts of its franchisee. They also contend that Motel 6 voluntarily assumed the duty to investigate their claims. Finally, they claim that Motel 6 breached its contractual duty to them by failing to provide training to their manager at the franchise location.
We conclude that the plaintiffs failed to create a genuine issue of fact regarding the liability of Motel 6 under the principal-agent theory. We also find that Motel 6 did not breach any contractual duty to train the franchise manager, and that even if it did, the plaintiffs were not third-party beneficiaries to the contract and therefore had no rights under it. Finally, we conclude that Fogt and Carter did establish a genuine issue of fact whether Motel 6 voluntarily assumed the duty to investigate their allegations and to remedy any ongoing sexual harassment.
The judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I
Abby Fogt and Mary Carter worked at a Motel 6 franchise located in Troy, Ohio. At all relevant times, the franchise was owned by BPV, Inc. ("BPV"), and the motel was managed by Lisa Serafini. According to Fogt and Carter, they were sexually harassed, assaulted and abused by Serafini during their employment.
In April, 1998, Fogt and Carter filed a complaint in the Miami County Court of Common Pleas against Motel 6, Prakash Patel [part-owner of the franchise], Serafini and BPV, Inc.[1] The complaint included, among other things, allegations of sexual harassment and violations of Ohio's Civil Rights Statute [R.C. 4112].
Motel 6 removed the case to federal court in May, 1998. After discovery was conducted, Motel 6 filed a motion for summary judgment upon the ground that it was not liable to the plaintiffs under either a franchisor-franchisee or principal-agent theory. Upon motion by the plaintiffs, the matter was remanded to state court, and the federal court declined to rule upon the motion for summary judgment. On September 10, 1999, the trial court rendered summary judgment in favor of Motel 6. Fogt and Carter appeal from the summary judgment rendered against them.
 II
The First Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, MOTEL 6, WHERE GENUINE ISSUES OF MATERIAL FACT EXISTED AS TO WHETHER MOTEL 6, A FRANCHISOR, VOLUNTARILY ASSUMED A DUTY TO INVESTIGATE SEXUAL HARASSMENT COMPLAINTS MADE BY EMPLOYEES OF ITS FRANCHISEE.
Fogt and Carter contend that Motel 6 voluntarily assumed the duty to investigate and remedy their sexual harassment claim. They further claim that they "relied, to their detriment, on the promises" made by Motel 6. Finally, they contend that Motel 6 breached its voluntarily undertaken duty, causing them to suffer harm.[2]
The standard of review in summary judgment cases is well-established. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370.
According to the depositions of both Fogt and Carter, they informed Motel 6 of their allegations of sexual harassment. Carter testified that some person at Motel 6 instructed her to "write things down," to "keep quiet," that someone would be sent to conduct an on-site investigation and that "everything would be taken care of." Fogt also testified that she was told to "keep it quiet," and that Motel 6 would conduct an on-site investigation.
The Director of Franchise Operations for Motel 6, Gil Gruen, admitted in his deposition that he received a call from someone complaining of sexual harassment at the Troy Motel 6. He testified that he told the caller to speak to the franchise owner about the matter. He further testified that he did not conduct any investigation, but merely referred the complaint to the franchise owner, and did not follow up on the complaint.
Rudy Martinez, the Director of Staffing and Affirmative Action Programs for Motel 6, testified that he also received a complaint about sexual harassment at the Troy Motel 6. He testified that he informed the caller that the corporate department would not handle the matter, since it occurred at a franchise location.
 Based upon the evidence in the record, we find that the plaintiffs have established a genuine issue of material fact with regard to their claim that Motel 6 voluntarily assumed the duty of investigating and rectifying the alleged harassment. We also find that there is a genuine issue of fact whether Motel 6 exercised ordinary care in carrying out the duty that it allegedly assumed. See, Best v. Energized Substation Serv., Inc. (1993), 88 Ohio App.3d 109, 115; Johnson v. BP Exploration Oil, Inc. (1996), 115 Ohio App.3d 266, 269-270' ("When one voluntarily assumes a duty to perform, and another reasonably relies on that assumption, the act must be performed with ordinary care."). A jury might find that Motel 6 did exercise ordinary care by referring the complaint to the franchisee. However, a jury might alternatively find, if it were to credit the plaintiffs' testimony, that Motel 6 did not take adequate steps to remedy the alleged problem — that some sort of follow-through beyond the mere referral of the plaintiffs' complaints was required.
The First Assignment of Error is sustained.
 III
The Second Assignment of Error states:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, MOTEL 6, WHERE GENUINE ISSUES OF MATERIAL FACT EXISTED AS TO WHETHER MOTEL 6 HAD THE RIGHT TO CONTROL THE DAY-TO-DAY OPERATIONS OF ITS FRANCHISEE.
Fogt and Carter contend that the trial court erred in granting summary judgment, because the evidence supports a finding that a principal-agent relationship existed between Motel 6 and BPV, and that Motel 6, as principal, was liable for the actions of its franchisee.
"The Court must scrutinize the relationship between persons who are franchisor-franchisee just as it would scrutinize any relationship in determining whether an agency relationship exists." Taylor v. Checkrite (S.D.Ohio 1986), 627 F. Supp. 415,416 Id. The key factor in determining the existence of an agency relationship is the right of control vested in the principal. Id.
"[T]he existence of the relationship of principal and agent depends, not upon any exercise of control at the moment, but upon the right of control." Id., at 417.
At first thought, it would appear that Motel 6 has a right to control employment decisions for its franchisees. For example, the franchise agreement states that Motel 6 has the right to approve any manager with authority over the "day-to-day" operations of its franchisees. The franchise agreement also states that the franchisee is expected to "comply promptly" with the standards contained in the confidential manuals provided by Motel 6 to its franchisees. Failure to do so may be considered a default by the franchisee of the franchise agreement, and can result in termination of the agreement.
The following excerpts from the manuals are relevant to this issue. First, the Manual on Motel Guidelines states that Motel 6 "will not tolerate discrimination or the appearance of discrimination of any kind" in regard to either employment practices or room availability. The Safety and Security Manual states that any employee "may" be dismissed for "offending, disrupting, or harassing guests or fellow employees." The Motel Guidelines Manual states that "all personnel should be clean, well groomed and in proper attire," "must be aware of their tone of voice," and "must be aware of their posture and facial expressions." It also bans "unprofessional behavior such as smoking or eating behind the desk or in guest/public areas" and instructs employees on how to greet guests in person and on the phone. The Quality Assurance Manual makes reference to a dress code. The Safety and Security Manual instructs employees not to give opinions to the media. Finally, the Property Recruitment Adbook Manual sets forth procedures for placing employment ads in the newspaper.
However, a closer examination of the record reveals that Motel 6 did not have the right to control decisions regarding hiring, firing, disciplining or demoting of employees of the Troy motel. Specifically, the franchise agreement states that the franchisee is "solely responsible" for all employment decisions including firing, hiring, training, wages and discipline. Serafini, who no longer worked for BPV at the time of her deposition, testified that Motel 6 did not have the power to fire, discipline or demote her. Likewise, Patel testified that BPV, not Motel 6, was Serafini's employer. He also stated that BPV did not ask Motel 6 for assistance in making employment decisions, and that Motel 6 did not involve itself with such issues. He further testified that Motel 6 had no role in the day-to-day management of the motel. Rather, its role was to inspect the operation to make sure that it met the national standard. Additionally, the statement in the manual that an employee may be dismissed for harassing other employees does not mandate that the franchisee fire the employee; instead, it recognizes the franchisee's discretion to do so.
From our review of the record, we conclude that Motel 6 does not have the right to control employment decisions. Instead, the franchisee has discretion to act with respect to the type of employment issues involved in the allegations in the plaintiffs' complaint. Accordingly, we conclude that Fogt and Carter have failed to establish the existence of a genuine issue of material fact whether Motel 6 has the right to control its franchisee's employment decisions. Therefore, we reject their claim that Motel 6 was liable under the theory of actual agency.
However, our inquiry does not end there. Under Ohio law, even when actual agency does not exist, apparent agency may be conferred if the principal holds its agent out to the public as possessing sufficient authority to act on its behalf and the person dealing with the agent knew these facts and, acting in good faith, had reason to believe that the agent possessed the necessary authority. Irving Leasing Corp. v. M H Tire Co.
(1984), 16 Ohio App.3d 191, 195.
We conclude that Fogt and Carter have not presented evidence to support a finding that they believed that Motel 6, rather than BPV, was their employer. Specifically, both women testified that they knew that Patel owned the motel. Further, the evidence shows that their W-2 tax forms indicated that BPV was their employer. Fogt specifically testified that their paychecks had "BPV" printed on them. Also, Carter testified that she knew that Motel 6 was not involved with employee discipline, and that decisions to hire and fire were made by Serafini. Given the record before us, we conclude that the evidence does not establish the existence of a genuine issue of material fact regarding the question of apparent agency.
The Second Assignment of Error is overruled.
 IV
The Third Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, MOTEL 6, WHERE GENUINE ISSUES OF MATERIAL FACT EXISTED AS TO WHETHER MOTEL 6 WAS NEGLIGENT IN THE RETENTION, HIRING, TRAINING AND SUPERVISION OF ITS FRANCHEE'S [SIC] EMPLOYEES AND MANAGERS.
In this Assignment of Error, Fogt and Carter contend that Motel 6 breached its contractual duty to train BPV's manager, Lisa Serafini, and that they were harmed by that breach of duty. In support, they argue that they were third-party beneficiaries of the "franchise agreement pursuant to which Motel 6 had a duty to train, consult, and advise its franchisee and managers." This argument is apparently premised upon the notion that had Serafini received the training required by the Franchise Agreement, she would not have sexually harassed the plaintiffs.
We first note that this argument was not raised in the trial court. Therefore, we need not consider it on appeal. Even if we were inclined to address this claim, we would overrule it as lacking merit.
"Only a party to a contract or an intended third-party beneficiary to a contract may bring an action on a contract in Ohio." Thornton v. Windsor House, Inc. (1991), 57 Ohio St.3d 158,161. There is no allegation that Fogt or Carter were parties to the franchise agreement executed by BPV and Motel 6. Furthermore, there is no evidence that Motel 6 intended to benefit either Fogt or Carter. Therefore, at most, Fogt and Carter were merely incidental beneficiaries of the franchise agreement, with no rights under the contract. Hill v. Sonitrol of Southwestern Ohio,Inc. (1988), 36 Ohio St.3d 36, 40.
Furthermore, the evidence shows that the training provided to franchisee managers did not relate to employee relations. Rather, the training concerned "operational policies and guidelines"; specifically, it dealt with matters such as pricing, renovations, guest treatment, purchasing, efficiency standards and security. Therefore, we conclude that even if Motel 6 breached the agreement by failing to train Serafini, that breach was not the proximate cause of the injury to Fogt and Carter. In other words, absent some evidence that the required training was designed to prevent or discourage sexual harassment by managers, we cannot say that the failure to provide the training resulted in Serafini's alleged behavior.
Finally, the record clearly shows that Motel 6 requested that Serafini attend its required training program, but that BPV failed to send her. Therefore, it was BPV, rather than Motel 6, who breached this particular provision of the franchise agreement.The Third Assignment of Error is overruled.
 V
The First Assignment of Error having been sustained, and the other assignments of error having been overruled, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
WOLFF and YOUNG, JJ., concur.
[1] The claims made against Patel, Serafini and BPV, Inc. were settled and dismissed with prejudice December 10, 1999.
[2] Motel 6 contends that this argument was not raised in the trial court. However, upon review of the record, we conclude that it was, at least arguably, raised as an issue in the plaintiffs' response to the motion for summary judgment.