OHIO STATE BAR ASSOCIATION v. MARTIN ET AL.

[Cite as *Ohio State Bar Assn. v. Martin*,
118 Ohio St.3d 119, 2008-Ohio-1809.]

(No. 2007–1939—Submitted December 12, 2007—Decided April 23, 2008.)

---

**Per Curiam.**

{¶ 1} Relator, Ohio State Bar Association, charged respondents, Terry and Eva Martin, their corporation (TELLR Corporation), their business (We The People of Cincinnati), their current franchisor (We The People USA, Inc.), and their former franchisor (IDLD, Inc.), with engaging in the unauthorized practice of law. Relator alleged that respondents had advised individuals in regard to completing legal pleadings and other documents, provided advice to individuals about their legal rights, and charged fees for these services.

{¶ 2} A panel of the Board on the Unauthorized Practice of Law considered stipulations of fact and waivers of notice and hearing between relator and the Martins and between relator and We The People USA, Inc. See Gov.Bar R. VII(7)(H). The panel accepted most of the stipulations. The panel also granted relator's motion for default judgment against IDLD, Inc. On the basis of a report by the panel, the board made findings of fact, conclusions of law, and recommendations.

{¶ 3} The board's final report concluded that respondents had engaged in the unauthorized practice of law in Ohio and recommended that we enjoin respondents from doing so in the future. The board also recommended that we impose certain civil penalties against respondents and order the Martins to make refunds to any customers injured by their unauthorized practice of law. See Gov.Bar R. VII(8)(B).

{¶ 4} We agree that the Martins, TELLR Corporation, We The People of Cincinnati, and We The People USA, Inc., engaged in the unauthorized practice of law and that the injunction, civil penalties, and refunds are warranted. We reject, however, the board's finding that IDLD, Inc., engaged in the unauthorized practice of law.

### Respondents' Unauthorized Practice of Law

{¶ 5} Respondents Terry and Eva Martin, Ohio residents, and their closely held Ohio corporation, TELLR Corporation, hold a franchise from respondent We The People USA, Inc. ("WTPUSA"). The franchise owned by the Martins does business as We The People of Cincinnati. The Martins had previously held a franchise from respondent IDLD, Inc.[1]

---

1. On March 7, 2005, WTPUSA purchased the assets of IDLD, Inc., f.k.a. We The People Forms and Service Centers USA, Inc. One of the assets conveyed to WTPUSA was IDLD's franchise agreement with the Martins.

{¶ 6} WTPUSA franchises "We The People" stores throughout the United States. WTPUSA's business model offers completed forms for use in basic, uncontested legal matters. We The People stores use workbooks, prepared by WTPUSA, that are essentially questionnaires pertaining to specific legal problems such as bankruptcy, divorce, dissolution, and probate. The customer is supposed to select the appropriate workbook for his or her particular problem or transaction and fill out the workbook. The store then forwards the completed workbook to a WTPUSA processing center, which incorporates the information into completed legal forms. The completed forms are then returned to the store for delivery to the customer. The store collects a fee from the customer and pays 25 percent of the fee to WTPUSA for its work.

*Terry and Eva Martin, TELLR Corporation,*
*and We The People of Cincinnati*

{¶ 7} The Martins are not and have never been attorneys admitted to practice, granted active status, or certified to practice law in Ohio pursuant to Gov.Bar R. I, II, VI, IX, or XI.

{¶ 8} The Martins have taken out advertisements in local newspapers for their We The People of Cincinnati store. They claim to have been following WTPUSA's suggestions when they placed advertisements that stated, "No Lawyers! Save Money." The advertisements offered "Living Trusts [for] $399" and listed the advantages of living trusts. They also offered various forms, including forms for wills and powers of attorney. They also offered divorce for $349, bankruptcy for $199, and incorporation for $399.

{¶ 9} Additionally, the Martins have in the past advertised services and prices on their website, including divorce, $349; dissolution with children, $349; dissolution without children, $249; qualified domestic relations order with joinder, $449; Chapter 7 bankruptcy, $199; and bankruptcy amendment, $99.

{¶ 10} **The Walters Matter.** Terry Martin advised Larita Walters which We The People workbook she should complete for purposes of filing a personal bankruptcy petition with the United States Bankruptcy Court. Martin answered the questions of Walters and her husband regarding disclosure of financial assets, and he told her that she must give a complete disclosure of her assets and debts. Martin further advised Walters that she need not list her husband's income on her bankruptcy filings. Walters, following Martin's counsel, did not include information about her husband's income but listed only income she received and expenses she paid.

{¶ 11} After filing her bankruptcy petition, Walters returned to the Martins and reported that the bankruptcy trustee had requested changes to certain schedules of the petition. In an e-mail to the Martins, a WTPUSA processing-

center employee falsely claimed that Walters had failed to list exemptions in the original workbook that was sent to the processing center. The processing center requested that she complete another workbook so that revised schedules could be produced, and Martin instructed Walters and her husband to fill out additional workbooks. During this process, he continued to advise Walters in order to help her provide information requested by the bankruptcy trustee. Martin also reiterated to Walters his advice that a listing of her husband's income was not necessary.

{¶ 12} The WTPUSA processing center then prepared amended documents containing the requested information and sent them to the Martins. The Martins charged Walters $199 for the initial services and an additional $99 for the amendments to the bankruptcy petition.

{¶ 13} Walters demanded a refund for the time and money spent correcting the errors in the initial bankruptcy filing. Martin declined to refund Walters's money and referred her to a WTPUSA representative. In response to a complaint filed with the Better Business Bureau in Cincinnati, Martin conceded that the WTPUSA processing center had made an error on Schedule C of Walters's bankruptcy petition.

{¶ 14} *The Krull Matter.* In the summer of 2005, Barbara Krull and one of her daughters went to the We The People of Cincinnati store after Krull's husband died. Terry Martin advised Krull as to the probate paperwork to be filled out and filed with the court.

{¶ 15} The Martins instructed Krull to follow the workbook concerning the appropriate people to list as heirs on the forms and who was to receive notice of the filings. When Krull questioned the listing of certain names, Martin told her that she had to list them so that they could not contest the will.

{¶ 16} After the WTPUSA processing center returned the completed forms for Krull's probate application, the Martins reviewed and revised the documents before they were filed with the court. The Krulls paid the Martins a fee of $399 for the services.

{¶ 17} However, the workbook and other materials provided to Krull did not clearly communicate that estates below certain values are eligible for relief from administration. The materials also failed to explain the valuation of joint property interests. Hence, the Krulls did not realize that they should have filed a request for relief from administration, rather than a probate application. The erroneous filings caused the Krulls unnecessary expenses.

{¶ 18} *The Bullock Matter.* In 2004, Bonita Bullock sought to end her marriage and retained the services of We The People of Cincinnati. Martin advised Bullock with respect to her options and sent her workbooks to complete

to file for divorce. Bullock contacted Martin to seek his advice, and Martin advised Bullock in completing the forms.

{¶ 19} The Martins charged Bullock $314 for these services, which she paid. After becoming dissatisfied with the service she received, Bullock received a partial refund of $125.

{¶ 20} *The Helton Matter.* In September 2004, Rosemary and Jeremy Helton went to We The People of Cincinnati to obtain information on filing for bankruptcy. The Heltons testified that the Martins recommended that they file for Chapter 7 bankruptcy instead of Chapter 13. The Martins also advised and assisted the Heltons in preparing their bankruptcy workbook and forms.

{¶ 21} The Heltons filed their petition with the bankruptcy court, but the trustee rejected the filing because it was incorrect. The Heltons went back to the Martins and told them the petition needed to be corrected. The Martins offered to amend the petition for an additional fee. The Heltons declined to pay more money to the Martins and instead retained an attorney, who filed an amended petition.

## *We The People USA, Inc.*

{¶ 22} The Martins are not employees of WTPUSA, and they have no business relationship with WTPUSA other than through their franchise agreement. WTPUSA owns no stores in Ohio, and its only Ohio franchise is the Martins' store, We The People of Cincinnati.

{¶ 23} *The Walters Matter.* The bankruptcy trustee questioned Walters about her failure to list her husband's income. The trustee also requested that Walters amend one of the schedules on her bankruptcy petition. Walters raised these questions with the Martins, who in turn raised the issues with the WTPUSA processing center.

{¶ 24} James McCasland, a WTPUSA employee working at the processing center, sent an e-mail to the Martins in response and advised the Martins to instruct Walters to revise certain schedules so that McCasland could do an amendment. McCasland later sent another e-mail to the Martins, stating: "There is no exemption amount for the house. One can only exempt equity, the liens are greater than the value; [y]ou have no equity to exempt."

{¶ 25} *The Krull Matter.* The allegations against WTPUSA stem from Terry Martin's selection of certain legal forms for Krull without her specific request for the particular probate forms, and from Martin's addition of handwritten information to complete Krull's forms before they were forwarded to the processing center. After Krull filed the application with the probate court, it was determined that the forms were incorrect and unnecessary because the Krull estate qualified for relief from administration, not probate.

{¶ 26} WTPUSA advised the Martins concerning the preparation and appropriateness of the probate forms for the Krulls.

## IDLD, Inc.

{¶ 27} At the time of the Bullock and Helton matters, the Martins held their franchise from We The People Forms and Service Centers, Inc., which is now known as IDLD, Inc.[2]

{¶ 28} The board found that IDLD had set out a policy of having its franchisees assist their customers in completing various legal forms and materials. As part of this policy, IDLD helped to select forms, answer questions, and train its franchisees. IDLD also encouraged its franchisees to attend court sessions to observe what judges do in the courtroom, obtain information about what customers are to expect when they go to court, observe bankruptcy creditor hearings to see what questions the trustee asks the debtors, note how many people have attorneys, and observe the attorney's role at the hearing.

{¶ 29} As to the Martins, they assisted Bullock in completing her divorce documents and the Heltons in completing their bankruptcy documents. The board found that as to Bullock and the Heltons, there was no difference between the Martins' We The People of Cincinnati store and IDLD, Inc. as franchisor and that the Martins' actions were therefore imputed to IDLD.

## Review

{¶ 30} The board found that respondents had engaged in the unauthorized practice of law and recommended that we enjoin respondents from further doing so. The board also recommended that we impose civil penalties against each of the respondents and that we also order the Martins to make refunds to any customers injured by their unauthorized practice of law. None of the parties have objected to the board report.

{¶ 31} Section 2(B)(1)(g), Article IV, Ohio Constitution confers on this court original jurisdiction over all matters related to the practice of law, including regulating the unauthorized practice of law. The unauthorized practice of law consists of rendering legal services for others by anyone not licensed or registered to practice law in Ohio. Gov.Bar R. VII(2). Advising others on their legal rights and responsibilities is the practice of law, as is the preparation of legal pleadings and other legal papers without the supervision of an attorney licensed in Ohio. *Cleveland Bar Assn. v. McKissic*, 106 Ohio St.3d 106, 2005-Ohio-3954, 832 N.E.2d 49, ¶ 6.

---

2. We The People Forms and Service Centers USA, Inc. changed its name to IDLD, Inc. as part of its transaction with WTPUSA.

{¶ 32} "An allegation that an individual or entity has engaged in the unauthorized practice of law must be supported by either an admission or other evidence of the specific act or acts upon which the allegation is based." *Cleveland Bar Assn. v. CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, paragraph one of the syllabus.

{¶ 33} Terry and Eva Martin, individually and on behalf of TELLR Corporation and We The People of Cincinnati, have admitted engaging in the unauthorized practice of law in relation to the Walters, Krull, and Bullock matters. Specifically, the Martins have admitted giving advice to people about their legal rights, including aid in preparing and completing documents, and charging fees for these services. The Martins have also admitted having given similar advice and services for fees to various other, unnamed individuals in Ohio.

{¶ 34} WTPUSA has admitted engaging in the unauthorized practice of law in connection with the Walters and Krull matters. Specifically, WTPUSA has admitted that one of its employees, James McCasland, engaged in the unauthorized practice of law when he sent e-mails advising Walters regarding her bankruptcy petition. In regard to the Krull matter, WTPUSA admitted advising the Martins, who in turn advised the Krulls concerning the preparation and appropriateness of certain probate forms.

{¶ 35} We adopt the board's findings in regard to these matters.

{¶ 36} *The Helton Matter.* The Helton matter was not addressed within the Martins' stipulated agreement with relator. The board found, however, that the Martins had engaged in the unauthorized practice of law in their dealings with the Heltons by participating in selecting forms for the Heltons and advising and assisting them in the preparation of their bankruptcy documents.

{¶ 37} Both Mr. and Mrs. Helton testified unequivocally that the Martins had advised and assisted them in preparing their bankruptcy documents. The Heltons specifically testified that the Martins had instructed them on various subjects, including (1) explaining differences in certain bankruptcy proceedings and recommending Chapter 7 over Chapter 13 bankruptcy, (2) recommending whether to list certain items in their bankruptcy documents, and (3) advising which sections of the documents to fill out and making corrections to the forms. In contrast, the Martins offered nothing beyond a general denial that they had given bankruptcy advice to the Heltons.

{¶ 38} Based on the foregoing, we agree that the board's findings in regard to the Heltons are supported by sufficient evidence, and we adopt them.

{¶ 39} *IDLD, Inc.* The board also found that IDLD, Inc., the franchisor to the Martins during the time of the Bullock and Helton matters, had engaged in the unauthorized practice of law through the actions of the Martins. The board

determined that the franchisor-franchisee relationship between IDLD and the Martins equated to the agency relationship found by the court in *Cleveland Bar Assn. v. Sharp Estate Servs., Inc.*, 107 Ohio St.3d 219, 2005-Ohio-6267, 837 N.E.2d 1183, ¶ 12. According to the board, IDLD "placed their franchisees in a position where they were, in effect, inviting UPL violations that were likely, if not certain, to occur based upon the manner in which their business was conducted."

{¶ 40} The relator argued before the board—and the board found—that an apparent-agency relationship existed between IDLD and the Martins and therefore that the Martins' unauthorized practice of law was imputed to IDLD.[3] For the following reasons, we find that the Martins' unauthorized practice of law cannot be imputed to IDLD under an apparent-agency theory.

{¶ 41} In determining whether IDLD is liable for the actions of its former franchisees, the Martins, we must scrutinize the relationship between the franchisor and franchisees just as we would scrutinize any relationship in determining whether an agency relationship exists. *Taylor v. Checkrite, Ltd.* (S.D.Ohio 1986), 627 F.Supp. 415, 416. In order to establish apparent agency, the evidence must show that the principal held the agent out to the public as possessing sufficient authority to act on his behalf and that the person dealing with the agent knew these facts, and acting in good faith had reason to believe that the agent possessed the necessary authority. *Master Consol. Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 575 N.E.2d 817, syllabus. Under an apparent-authority analysis, an agent's authority is determined by the acts of the principal rather than by the acts of the agent. The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority. Id. at 576–577.

{¶ 42} The Martins admitted engaging in the unauthorized practice of law by advising Bullock of options for ending her marriage, selecting her forms, and helping her complete those forms. The Martins had similarly counseled the Heltons regarding options in filing their bankruptcy petition and had assisted them with the preparation of their forms. Yet IDLD had informed the Martins that they could not practice law without being licensed members of the bar. IDLD advised the Martins to display signs in their store and to verbally inform customers that they were not attorneys and that they were prohibited from offering legal advice. IDLD also instructed the Martins not to select forms or legal procedures for customers and not to tell them how to complete forms. IDLD warned the Martins that selecting forms and discussing laws or legal

---

3. The board also found that an apparent-agency relationship existed between the Martins and their current franchisor, WTPUSA. In light of WTPUSA's admission that it engaged in the unauthorized practice of law, we decline to address this issue.

procedures with customers would be construed as the unauthorized practice of law. IDLD further instructed the Martins to refer customers' legal questions to IDLD's supervising attorney or an attorney of a customer's choice.

{¶ 43} For their part, the Martins testified that they understood from the beginning of their franchise agreement with IDLD that they could not give legal advice and that they could not select or recommend forms to customers or assist them in completing forms. Indeed, the Martins told customers orally and through customer contracts that they were prohibited from offering legal advice.

{¶ 44} Thus, there is no evidence that IDLD represented to the Martins or their customers that the Martins were authorized to commit any of the acts that constituted the unauthorized practice of law in the Bullock and Helton matters. Accordingly, we cannot impute the Martins' unauthorized practice in these matters to IDLD.

## The Recommended Injunction and Civil Penalties

{¶ 45} Having found that the Martins, TELLR Corporation, We The People of Cincinnati, and WTPUSA engaged in the unauthorized practice of law by giving legal advice and assisting individuals in preparing legal pleadings and other documents, we accept the board's recommendation to issue an injunction prohibiting these and all other acts constituting the practice of law. We also accept the board's recommendation, made in accordance with the agreement between relator and the Martins, that the Martins refund all fees collected from Walters, the Krulls (including any charges to the estate of Mr. Krull), and Bullock and make refunds to any other customers harmed by their unauthorized practice of law.

{¶ 46} Last, we consider the board's recommendation of civil penalties under Gov.Bar R. VII(8)(B). The board recommended joint and several civil penalties against the Martins, TELLR Corporation, and We The People of Cincinnati of $500 for each of the Walters, Krull, Bullock, and Helton matters, for a total of $2,000. The board recommended civil penalties of $10,000 against WTPUSA in the Walters and Krull matters, for a total of $20,000. We find these penalties appropriate and accept the board's recommendation. Costs are taxed to respondents.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Jeffrey J. Fanger and Eugene P. Whetzel, for relator.

Mann & Mann, L.L.C., David S. Mann, and Michael T. Mann, for respondents Terry and Eva Martin, TELLR Corporation, and We The People of Cincinnati.

Kegler, Brown, Hill & Ritter, L.P.A., Christopher J. Weber, and Geoffrey Stern, for respondent We The People USA, Inc.