OPINION
{¶ 1} Valentin Aguilar appeals from the judgment of the Xenia Municipal Court wherein the court ordered a ten thousand dollar bond posted by Aguilar for the appearance of Gildardo Diaz forfeited.
 {¶ 2} This matter began on January 13, 2003 when Gildardo Diaz was arrested and charged with falsification by Xenia police. The arrest report indicated that Diaz was being detained for several alleged offenses including an immigration detainer. The notation of "no bond" was handwritten on the arrest report. Two days later, Diaz appeared in Xenia Municipal Court for his arraignment. Despite the detainer, the trial court set Diaz's bond at $10,000 and Valentin Aguilar posted the bond as required. Due to the immigration detainer, Diaz was transferred into the custody of the Immigration Naturalization Service (INS) and he was transferred to a different jail on
 {¶ 3} January 22, 2003. On January 22, 2003, the Xenia Municipal Court issued an order scheduling a trial on the falsification charge for February 12, 2003.
 {¶ 4} Despite the transfer of Mr. Diaz into federal custody by local Xenia authorities, it appears that the court called Mr. Diaz's case for trial on February 12, 2003. The court noted in its file "2-12-03 D did not appear. Taken under advisement." Handwritten Journal Entry.
Further, the court noted on the bottom of the same journal entry "Federal Pretrial Services — in federal custody . . . Fed charge alien — prev. deported." Id. It is unclear from the record as to whether the court made any attempt to have Mr. Diaz transferred back to Xenia for trial.
 {¶ 5} The day after the scheduled trial, the Xenia City Prosecutor moved the court for permission to amend the charge against Mr. Diaz from a falsification violation of the Ohio Revised Code to a violation of the Codified Ordinance of Xenia. The Court granted this motion on February 14, 2003. Handwritten Journal Entry. However, no further dates were scheduled for this amended charge. Instead, on February 25, 2003, without any further proceedings and with no dates scheduled for the amended charge, the court forfeited the bond posted by Mr. Aguilar and dismissed the case without prejudice. Id. The court's records indicate that the forfeited bond money was used to pay court costs of $74.00 and a fine in the amount of $9,926.00.
 {¶ 6} In his first argument, Aguilar contends the trial court erred in forfeiting his bond without providing him a show cause hearing. Aguilar argues that the trial court failed to comply with the provisions of R.C. 2937.36(C) concerning forfeiture. The Revised Code provides as follows:
 {¶ 7} "Upon declaration of forfeiture, the magistrate or clerk of the court adjudging forfeiture shall . . . notify accused and each surety by ordinary mail at the address shown by them in their affidavits of qualification or on the record of the case, of the default of the accused and the adjudication of forfeiture and require each of them to show cause on or before a date certain to be stated in the notice, and which shall not be less than twenty nor more than thirty days from the date of mailing notice, why judgment should not be entered against each of them for the penalty stated in the recognizance. If good cause by production of the body of the accused or otherwise is not shown, the court or magistrate shall thereupon enter judgment against the sureties or either of them, so notified, in such amount, not exceeding the penalty of the bond, as has been set in the adjudication of forfeiture, and shall award execution therefore as in civil cases."
 {¶ 8} Aguilar argues that the trial court failed to provide Aguilar an opportunity to show cause why bail should not have been forfeited contrary to R.C. 2937.36.
 {¶ 9} The Lucas County Court of Appeals has held that notice and a hearing prior to the execution of a bond forfeiture are not required where the bail is posted in cash by the defendant. State v. Patton
(1989), 60 Ohio App.3d 99. We find the opinion persuasive. The court held that the appropriate law to apply in cash bonds is R.C. 2937.35 which provides as follows:
 {¶ 10} "Upon the failure of the accused or witness to appear in accordance with its terms the bail may in open court be adjudged forfeit, in whole or in part by the court or magistrate before whom he is to appear. But such court or magistrate may, in its discretion, continue the cause to a later date certain, giving notice of such date to him and the bail depositor or sureties, and adjudge the bail forfeit upon failure to appear at such later date."
 {¶ 11} Once bail has been forfeited, it may be remitted, in whole or in part, pursuant to R.C. 2937.39. That section provides:
 {¶ 12} "After judgment has been rendered against surety or after securities sold or cash bail applied, the court or magistrate, on the appearance, surrender, or rearrest of the accused on the charge, may remit all or such portion of the penalty as it deems just and in the case of previous application and transfer of cash or proceeds, the magistrate or clerk may deduct an amount equal to the amount so transferred from subsequent payments to the agencies receiving such proceeds of forfeiture until the amount is recouped for the benefit of the person or persons entitled thereto under order o[f] remission."
 {¶ 13} Judge Glasser noted the following factors guide the court in remitting a forfeited bail:
 {¶ 14} "Accordingly, in determining whether to remit a previous revocation of bail, the court should consider the ultimate appearance of the defendant as grounds for recompensation. Bass, supra, at 260. Other factors to consider upon a motion for remission include, inter alia, the inconvenience and delay to the prosecution, the expense involved, the willfulness of the violation as well as any other mitigating circumstances. See Appearance Bond Surety v. United States (C.A. 8, 1980), 622 F.2d 334, 336, and Worth v. State (1931), 39 Ohio App. 227, 117 N.E. 235. Regardless of the circumstances under which forfeiture is declared, it may be set aside `* * if it appears that justice does not require enforcement. * * *' Accredited Surety Cas. Co. v. UnitedStates (C.A. 4, 1983), 723 F.2d 368, 369. Overall, a bond forfeiture order should bear some reasonable relation to the costs and inconvenience incurred in gaining custody of the accused and again preparing for trial. Appearance Bond, supra, at 337." Patton, supra, at 101.
 {¶ 15} Aguilar's second argument is that if he had been provided a show cause hearing, he would have demonstrated that it was impossible for him to produce Mr. Diaz because the City of Xenia delivered Diaz into federal custody and there was no evidence that the City made any attempt to transfer him from federal custody so Diaz could stand trial. As such, Aguilar argues that his performance under the surety contract was rendered impossible by operation of law.
 {¶ 16} We have examined the cash bond signed by Valentin Aguilar in this matter. There is no surety language in the bond. In Patton, Judge Glasser also addressed this issue:
 {¶ 17} "In his third assignment of error, appellant asserts that the trial court erred in denying his request for a hearing with respect to the bond forfeiture. Appellant is arguing, in essence, that because his family collected the $10,000 bond, they were, in effect, `sureties' and were entitled to notice and a hearing under R.C. 2937.36.
 {¶ 18} "The bond receipt issued September 26 contains only one name — that of appellant. In addition, the defendant himself makes the deposit even if someone other than the defendant actually posts the bail. See Wilson, supra. Accordingly, in the case of a cash bond, there is no relationship of principal and surety — only the relationship of principal. Id.
 {¶ 19} "It is important to differentiate between a recognizance bond and cash bail. If this had been a recognizance bond, the sureties would clearly have been entitled to notice of appellant's default. R.C.2937.36(C). On the contrary, with cash bail, no surety is involved; there are no due process considerations and no notice is required. See R.C.2937.36(A); Wilson, supra; and Riggs, supra." Id., at 104.
 {¶ 20} Lastly, Aguilar argues that the trial court improperly forfeited the bond on the amended charge without scheduling any hearing date. The record discloses that on February 14, 2003, the trial court granted the City's motion to amend the falsification charge to a similar one under Xenia ordinances. The record discloses that the trial court had taken under advisement whether to order Diaz's bond forfeited on the original trial date of February 12, 2003 when Diaz failed to appear. The court ordered the bond forfeited on February 25, 2003 in respect to the "original" charge. The failure of the court to set a trial date on the amended charge is of no consequence.
 {¶ 21} Although we entertain some doubt about the constitutionality of R.C. 2937.35 to the extent that it fails to provide for a pre-forfeiture hearing, appellant has not raised a constitutional argument. The trial court upon remand should therefore conduct a post-forfeiture remission hearing to determine whether it should remit the bond previously forfeited because of the defense of impossibility of performance. See, State v. Scherer (1995), 108 Ohio App.3d 586.
 {¶ 22} The defendant was never released on the bond he posted because of the federal detainer and thus he received absolutely nothing for having posted the $10,000 bond in the first place. The court's own entries indicate that Aguilar never left the Greene County Jail and the City need only have transported him to the municipal courtroom for the trial.
 {¶ 23} The judgment of the trial court is Affirmed in part and Reversed in part and this matter is Remanded to the trial court for further proceedings.
Fain, P.J., and Wolff, J., concur.