OPINION
{¶ 1} The defendant in this case, Felipe Delgado, was indicted in May, 2001, for possession of marijuana in an amount exceeding 1,000 grams. After Delgado pled not guilty, the court set a $10,000 cash/surety bond. Bond in that amount was filed, with Diamond State Insurance (Diamond) as the surety. Subsequently, Delgado failed to appear for a hearing in August, 2001. The trial court granted two extensions of time to Diamond, but Diamond failed to produce Delgado. As a result, the court granted a $10,000 judgment against Diamond in December, 2001. The proceeds of the judgment were to be divided equally between the Clark County Prosecutor's Office and the Springfield Police Department.
 {¶ 2} On July 10, 2002, Delgado and the prosecutor appeared in court, and the court set a $25,000 cash/surety bond. This time, the bond was obtained through Banker's Insurance Company and AA Craven Bail Bonds (Banker's and Craven). Delgado was then released from custody on July 26, 2002.
 {¶ 3} Subsequently, the court set a jury trial for September 17, 2002, and notified Delgado of the trial date. Delgado again failed to appear, causing the court to file a notice and adjudication of bail forfeiture on September 18, 2002. On the same day, the court filed an order authorizing a capias for Delgado's arrest. The court also gave Banker's and Craven two extensions of time to apprehend Delgado, but they were not successful in bringing Delgado before the court. Consequently, the court entered a $25,000 judgment against Craven on January 8, 2003. Again, the proceeds were to be divided equally between the prosecutor and sheriff's department. Attached to the judgment entry (along with other documents) was a letter dated November 8, 2002, from the Clark County Prosecutor to the Clark County Sheriff's Office. The letter asked the sheriff to enter a warrant for Delgado's arrest into the National Crime Information Center (NCIC).
 {¶ 4} Delgado was ultimately arrested and was returned to Clark County in late January, 2003. As a result, Banker's and Craven filed a motion for remittitur on February 7, 2003. The movants noted that Delgado was arrested and delivered to Clark County shortly after the bond was forfeited. In addition, the movants attributed the arrest to their request that Delgado's name be entered into the NCIC.
 {¶ 5} The trial court held a hearing on the motion for remittitur, and received testimony from Donald Shurry, the owner of A-1 Bond Service (A-1), which was located in Cleveland, Ohio. According to Shurry, an A-1 agent wrote the bond in Cleveland and asked Craven to execute it in Springfield. The bond was originally written in reliance on the representations of a prosecutor in Cleveland, who claimed that Delgado was a personal friend. The prosecutor also told A-1 that he had someone who wanted to get Delgado out of jail who would sign for the bond. After the bond was forfeited, A-1 learned that Delgado was, in fact, a client of the prosecutor, and that the prosecutor, himself, had come to Springfield and had gotten Delgado out on bond. In addition, A-1 learned that the Cleveland prosecutor was currently under indictment for accepting bribes (not connected to this case).
 {¶ 6} Shurry requested that A-1 had apprehended Delgado in Arizona, but was forced to release him because his name had not been entered into the NCIC. This occurred before bond was forfeited. Shurry further indicated that Delgado was ultimately successfully apprehended after Mr. Craven contacted the Sheriff's Department and had Delgado's name entered into the NCIC.
 {¶ 7} The State did not present testimony at the hearing. However, the prosecutor stated that its office had placed the matter in the NCIC in November, 2002, and that Delgado was arrested in Oklahoma in January, 2003. According to the prosecutor, the State paid about $882 to transport Delgado from Oklahoma to Springfield.
 {¶ 8} After the hearing, the trial court filed a decision, noting that the movant made good faith attempts to produce Delgado before judgment was granted. The court further observed that the movant caught Delgado in another state, but lost him because that state could not find Delgado in the NCIC. The court indicated that it appreciated the movant's effort, and had granted extensions of time so that Delgado could be presented, and loss of the bond could be avoided. Nonetheless, the court denied the motion for remittitur because the surety "assumed the risk" due to the nature of its business.
 {¶ 9} A-1 now appeals (on behalf of Banker's), claiming in a single assignment of error that: "[t]he trial court abused its discretion to the prejudice of the Appellant in failing to grant the remittitur motion of A-1 Bond Service, Inc."
 {¶ 10} After considering the assignment of error, we find that it has merit. Accordingly, the judgment of the trial court will be reversed and this matter will be remanded for further proceedings.
 I {¶ 11} A-1 makes three arguments to support its assignment of error. The first is that the trial court failed to properly consider required factors in deciding the motion for remittitur. In addition, A-1 claims: (1) that remittitur is mandated when a surety's performance on a bond contract is rendered impossible; and (2) that public policy is severely affected if forfeiture is granted in situations where the state's error frustrates the surety's efforts to apprehend a defendant. We need not address these latter two points, because the first argument disposes of the appeal.
 {¶ 12} If an accused fails to appear in court, his or her bail may be forfeited. See Crim. R. 46(I) and R.C. 2937.35. After a default, the court must notify the accused and each surety, and must require them to show cause why judgment should not be entered. R.C. 2937.36(C). If the defendant and surety fail to show good cause, the court enters judgment against the surety for the penalty stated in the recognizance. Id. However, if the accused later appears, surrenders, or is re-arrested on the charge, the court may remit all or part of the penalty, as it deems just. R.C. 2937.39.
 {¶ 13} Bail is intended to ensure that a defendant appears at all stages of a criminal proceeding. Consequently, in deciding whether to grant motions to remit a prior revocation of bail, trial courts consider:
 {¶ 14} "`the ultimate appearance of the defendant as grounds for recompensation, * * * the inconvenience and delay to the prosecution, the expense involved, [and] the willfulness of the violation as well as any other mitigating circumstances. * * * Regardless of the circumstances under which forfeiture is declared, it may be set aside "* * * `if it appears that justice does not require' enforcement. * * *" * * * Overall, a bond forfeiture order should bear some reasonable relation to the costs and inconvenience incurred in gaining custody of the accused and again preparing for trial.'" State v. Patton (1989), 60 Ohio App.3d 99, 101
(citations omitted). Accord, State v. Am. Bail Bond Agency (1998),129 Ohio App.3d 708, 713, and Xenia v. Diaz, Greene App. No. 2003-CA-25, 2003-Ohio-6894, at ¶'s 13-14.
 {¶ 15} In State v. Jackson, 153 Ohio App.3d 520, 2003-Ohio-2213, the Third District Court of Appeals noted that Ohio's appellate districts "uniformly require trial courts to consider and weigh various factors in order to reconcile the purposes of both bail and bond remission."2003-Ohio-2213, at ¶ 9. Accordingly, the Third District held that:
 {¶ 16} "`when considering a request for post-appearance bond remission pursuant to R.C. 2937.39, a trial court should balance the reappearance of the accused and the efforts expended by the surety to effectuate the reappearance against the inconvenience, expense, and delay suffered by the state and any other factors the court finds relevant. A trial court's conclusions after conducting this balancing test will not be reversed absent a showing of abuse of discretion.'" Id.
 {¶ 17} The trial court in Jackson had denied a motion for remittitur in a summarized judgment entry and did not set forth reasons for its denial. Id. at ¶ 10. As a result, the Third District found that the trial court decision was arbitrary and was an abuse of discretion. Id.
 {¶ 18} In the present case, the trial court did give a reason for the denial. However, the court's reason was not consistent with the balancing test. Essentially, the trial court simply found that a surety assumes the risk of forfeiting bail, even if it makes a good faith attempt to produce the defendant.
 {¶ 19} The risk of forfeit is inherent in any bail situation, however, and remission is only at issue if the surety fails to timely produce a defendant. If trial courts only had to consider which party bore the risk of non-production, there would be no reason to entertain motions for remission. The balancing test requires courts to do more, by mandating that they evaluate and weigh various factors. Because the trial court in the present case failed to comply with these requirements, its decision was necessarily arbitrary, and was an abuse of discretion.
 {¶ 20} Accordingly, the single assignment of error has merit and is sustained. The judgment of the trial court is reversed, and this matter is remanded for further proceedings.
WOLFF, J., and GRADY, J., concur.