The STATE of Ohio, Appellee,

v.

SCHERER; American Bankers Insurance Company et al., Appellants.

[Cite as *State v. Scherer* (1995), 108 Ohio App.3d 586.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 95 CA 54.

Decided Dec. 20, 1995.

*William F. Schenck,* Greene County Prosecuting Attorney, and *Robert K. Hendrix,* Assistant Prosecuting Attorney, for appellee.

*Jack Harrison,* for appellants.

GRADY, Judge.

American Bankers Insurance Company and its agents, Thomas and Vicki Short, appeal from a judgment forfeiting a surety bond appellants had posted to

secure the pretrial release of their principal, Anthony Scherer, when he failed to appear in court.

Anthony Scherer was indicted on one count of passing bad checks, R.C. 2913.11(A). His bond was set at $5,000, pursuant to Crim.R. 46(C)(4). Scherer's release from jail was secured by a bond posted by Thomas and Vicki Short on behalf of American Bankers Insurance Company.

As a condition of his release on bond, Scherer was ordered by the court to maintain his residence in Buffalo, Kentucky, and to not move from there without giving prior notice to the court's Probation Department. Scherer was also required to report weekly to the Probation Department by telephone.

On February 1, 1995, Scherer entered a plea of guilty to the passing bad checks charge. The court set sentencing for March 24, 1995. Scherer's bond was continued and he returned to Kentucky.

On February 17, 1995, the sureties learned that Scherer had failed to appear in Kettering Municipal Court on unrelated misdemeanor charges. The sureties called Scherer's probation officer in Kentucky, who told them that Scherer had apparently moved and that his whereabouts were unknown. The sureties then advised Scherer's Greene County probation officer that Scherer appeared to have violated the conditions of his release by moving without giving prior notice. The sureties requested a felony arrest warrant so that Scherer could be arrested in Kentucky and returned to Ohio.

Based on the actions of the sureties, the trial court determined that Scherer had violated the terms of his release and issued a warrant for his arrest. Scherer was arrested on the warrant in Kentucky. However, he was detained by Kentucky to face probation revocation charges based on his passing bad checks conviction in Ohio. Kentucky revoked his probation, and also filed new charges for other offenses Scherer had committed there. Scherer was convicted of these new charges. He was incarcerated by Kentucky, which has refused to release him for return to Ohio.

When Scherer failed to appear for his sentencing on the bad check charge, the state moved for forfeiture of the $5,000 bond which the appellants had filed on Scherer's behalf. Pursuant to R.C. 2937.36(C), the trial court ordered the bond forfeited, and set a date for the sureties to show good cause why a judgment of forfeiture should not be entered against them.

A bond forfeiture hearing was held, at which the sureties asserted the defense of impossibility of performance as good cause for being excused from their obligation on the bond. On July 13, 1995, the trial court issued its judgment entry ordering forfeiture of Scherer's $5,000 bond. The trial court held that the impossibility of performance defense asserted by the sureties was negated by the

fact that Scherer's present incarceration in Kentucky was the result of Scherer's own misdeeds, and that the sureties should not benefit from defendant's misbehavior.

The sureties have timely appealed from the trial court's order forfeiting Scherer's $5,000 bond. The forfeiture has been stayed pending this appeal.

### Assignment of Error

"The intervention of Kentucky authorities incarcerating defendant for a previously ordered sentence made surety's plan to return defendant impossible of performance."

"The purpose of bail is to ensure that the defendant appears at all stages of the criminal proceedings." Crim.R. 46(A). If the court determines that the defendant's release on a personal recognizance or an unsecured appearance bond is insufficient to that purpose, the court may "[r]equire the execution of a bail bond with sufficient solvent sureties." Crim.R. 46(C)(4). A surety who has posted a bond is discharged when the defendant makes a final appearance in the proceeding, or the accused is surrendered or delivered to the court or is arrested on the request of the surety, or the surety pays the sum entered in any order of forfeiture after the defendant has failed to appear. R.C. 2937.40(A).

The court may order the bail posted by the defendant forfeited for failure to appear as ordered. R.C. 2937.35. If the bail is in the form of a surety bond, forfeiture is governed by R.C. 2937.36(C), which states:

"Upon declaration of forfeiture, the magistrate or clerk of the court adjudging forfeiture shall * * * notify accused and each surety by ordinary mail at the address shown by them in their affidavits of qualification or on the record of the case, of the default of the accused and the adjudication of forfeiture and require each of them to show cause on or before a date certain to be stated in the notice, and which shall be not less than twenty nor more than thirty days from date of mailing notice, why judgment should not be entered against each of them for the penalty stated in the recognizance. *If good cause by production of the body of the accused or otherwise is not shown*, the court or magistrate shall thereupon enter judgment against the sureties or either of them, so notified, in such amount, not exceeding the penalty of the bond, as has been set in the adjudication of forfeiture, and shall award execution therefor as in civil cases." (Emphasis added.)

A surety bond is a contract in which the surety promises the court that it will pay a monetary penalty if the accused who is released on the bond posted by the surety fails to appear in court when ordered. The nonappearance operates as a condition precedent to the surety's duty to perform. The surety

may be excused from its duty to pay the penalty by demonstrating good cause why judgment should not be entered against the surety in the amount of its bond. That showing may consist of producing the "body" of the accused, or "otherwise." R.C. 2937.36(C).

Because a surety bond is a contract, it is subject to the rules governing performance of contracts. According to the rule concerning impossibility of performance, a promisor may be excused from an obligation to the promisee when the performance promised is rendered impossible by operation of law, if that impossibility was not foreseeable to the promisor. The rule is founded on the theory that when the object of an agreement is forbidden by law, the promisor is excused from undertaking its accomplishment. Where the performance promised is only temporarily prohibited, the contract remains in force, though dormant, and when the legal impediment is removed the surety must perform on its undertaking.

A criminal defendant who has been incarcerated by one jurisdiction cannot appear in the courts of another while that incarceration continues, absent extradition by the latter jurisdiction. While the defendant remains incarcerated, a surety who is obligated on a bail bond that obtained the defendant's release by the latter's jurisdiction may be excused from paying the penalty the bond requires because the object of the surety's promise, the defendant's appearance, is forbidden by law. However, the surety must demonstrate that the condition which rendered the defendant's appearance impossible was also unforeseeable prior to its occurrence. Whether any event is foreseeable is a question of fact determined from all the relevant facts and circumstances.

A person who is in jeopardy of loss of liberty or property has some inducement to flee a jurisdiction that might impose those penalties for a crime of which the person stands accused. The inducement to flee is even greater when the defendant has been convicted and awaits imposition of a sentence. A surety that agrees to pay a penalty if the accused fails to appear to face those possible outcomes is on notice of that fact. Therefore, when the defendant cannot thereafter appear because the defendant is incarcerated in another jurisdiction, a surety who seeks to avoid the penalty must demonstrate that the defendant's incarceration was not foreseeable to the surety or preventable by it.

In *Taylor v. Taintor* (1872), 83 U.S. (16 Wall.) 366, 21 L.Ed. 287, the defendant was jailed in Connecticut on a charge of grand larceny. The sureties posted bail and obtained his release, on condition that defendant would appear for a scheduled court hearing. Once free, the defendant returned to his home state of New York where he was seized on request of the Governor of Maine. New York's Governor sent the defendant to Maine, where he was jailed on a burglary

charge. When the defendant did not appear for his scheduled hearing in Connecticut, his bail was forfeited. The sureties appealed, claiming as a defense that the Governor of New York, in sending the defendant to Maine, had made it legally impossible to ensure his presence in Connecticut. The Supreme Court acknowledged the impossibility of performance defense, stating:

"It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of the law. Where the principal dies before the day of performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor of another state, it is within the third. * * *" (Footnotes omitted.) *Id.* at 369–370, 21 L.Ed. at 289–290.

The court concluded, however, that the impossibility of performance defense pleaded by the sureties would not suffice in that case to exonerate them:

"If [defendant] had remained in Connecticut he would probably not have been delivered over to the authorities of Maine, and would not, therefore, have been disabled to fulfill the condition of his obligation. * * * The plaintiffs in error are in fault for the departure from Connecticut, and they must take the consequences. * * *

" * * * The result is due, not to the Constitution and law of the United States, but to [the sureties] own supineness and neglect. Under the circumstances they can have no standing in court to maintain this objection." *Id.* at 372–373, 21 L.Ed. at 291.

In *State v. Hughes* (1986), 27 Ohio St.3d 19, 27 OBR 437, 501 N.E.2d 622, the defendant was arrested and jailed in Cuyahoga County on various felonies. The surety posted bond and obtained the defendant's release. The defendant subsequently fled and failed to appear in court. The surety subsequently located the defendant in Chicago, Illinois, and was instrumental in having defendant taken into custody there. The surety then notified Cuyahoga County authorities of the defendant's whereabouts. A detainer was lodged against defendant, and Cuyahoga County authorities notified Cook County, Illinois officials that extradition proceedings would be instituted to return defendant to Ohio. The defendant refused to waive extradition, however. The Cook County, Illinois court then set bail for defendant pending the extradition hearing. Defendant posted that bail in Chicago and once again fled, failing to appear for the extradition hearing.

The surety sought to be excused from liability on Hughes's bond in Cuyahoga County, arguing that the act of the Cook County court in releasing defendant on

bond relieved it from responsibility and rendered performance by the surety impossible. In refusing to exonerate the surety, the Ohio Supreme Court compared the case to *Taylor v. Taintor, supra,* and stated:

"The sureties' argument rejected by the court in *Taylor* is the same as that urged by appellants herein. We similarly conclude that appellants' act-of-law defense will not serve to exonerate their liability on Hughes' bond. Although we realize that appellants' efforts aided Hughes' recapture in Chicago, after notifying the authorities in Cuyahoga County, appellants did nothing further to fulfill their obligation to produce Hughes in court. Yet, having already gone to great time and expense in locating Hughes, appellants might have met their obligation by appearing before the Cook County court to argue against the allowance of the extradition bond which freed him." *Id.* at 21, 27 OBR at 439, 501 N.E.2d at 624.

In *State v. Ohayon* (1983), 12 Ohio App.3d 162, 12 OBR 486, 467 N.E.2d 908, the defendant was charged with arson and the surety posted a $50,000 bond to obtain defendant's pretrial release. One of the conditions of defendant's bail was that he surrender both his United States and Israeli passports. Defendant subsequently failed to appear in court, whereupon the trial court declared a bond forfeiture, issued a capias for defendant, and notified the surety. The surety subsequently learned that defendant had obtained an illegal passport and had fled to Israel. The surety went to Israel and located defendant but defendant refused to voluntarily return to the United States. Moreover, Israel was unwilling to honor its extradition treaty with the United States.

In seeking exoneration from its liability on the defendant's $50,000 bond, the surety asserted impossibility of performance, based upon Israel's foreign policy decision not to honor the extradition request for the defendant. In affirming the trial court's forfeiture of the bond and rejection of the surety's impossibility of performance defense, the court of appeals compared the case to *Taylor, supra,* and observed:

"The facts *sub judice* are similar except that defendant Ohayon left the state and country on his own accord. Appellant's proposed defense is not that the Israeli government seized defendant from the United States, but that appellant is now unable to return the defendant to the United States after defendant voluntarily fled. The facts *sub judice* are even less compelling than the facts in *Taylor.*

"The escape of a defendant is the business risk of a bail surety. It is precisely the situation which a surety guarantees against. Appellant insured the risk by securing property of the defendant. The fact that appellant is now unable to deliver the defendant or fully collect on his collateral will not shift the risk to the obligee. We hold, therefore, that it is an insufficient defense in a bond forfeiture proceeding that appellant is unable to produce the defendant due to foreign policy

decisions when the defendant voluntarily fled the country prior to his initial court appearance date." *Id.* at 165, 12 OBR at 489, 467 N.E.2d at 911–912.

Appellee state of Ohio relies on *Taylor, Hughes,* and *Ohayon* in arguing that the sureties should not be excused from their obligation on Scherer's bond. We believe those cases are distinguishable, however. In each, the defendant's incarceration in another jurisdiction proximately resulted from his illegal flight from the jurisdiction that had released him on bond, an event reasonably foreseeable to the surety. In each of those cases the surety was negligent in failing to prevent the defendant's flight and/or had failed to take actions available to it to remedy the effects of that negligence. Here, the defendant's departure from Ohio to go to Kentucky was not illegal; he was required by the court to do that. Therefore, his subsequent incarceration in Kentucky did not proximately result from any negligence of the sureties in failing to prevent his leaving Ohio. Neither did the sureties fail to take an action available to them to secure his return, as the sureties in *Hughes* failed to do.

In determining whether a surety has shown good cause for being excused from performing on its bond, the object of that bond must be kept in mind. Its object is the defendant's appearance in court, not his good behavior. The surety is obligated to pay the bond amount as a penalty for the defendant's nonappearance, not as a fine or penalty for his bad acts. Of course, his bad acts may coincide with his nonappearance or result in it. But as the surety has not promised the defendant's good behavior, his bad acts, though possibly foreseeable to the surety, do not themselves trigger the surety's duty to pay a penalty in the amount of its bond. Stated otherwise, as the surety has not undertaken the role of the defendant's guardian angel, the defendant's bad acts are not within the business risks the surety assumes when it writes a bail bond.

The fact that Scherer's detention in Kentucky which prevented his appearance in Ohio resulted from his own misconduct is of no consequence to the obligations of his sureties, who have not promised his good behavior, only his appearance in court in Ohio. Because Scherer's inability to appear does not proximately result from any fault of the sureties, who had no obligation to prevent his travel to Kentucky, and who diligently sought his return from there, the appellants have demonstrated good cause for being excused from performing on their bond.

Considerable disagreement exists among the various states concerning the effect on a surety's liability on a bail bond of a defendant's incarceration in another jurisdiction. We believe the better view on the facts presented in this case is that Anthony Scherer's imprisonment in Kentucky and the refusal of Kentucky authorities to return him to Ohio at this time constitutes "good cause"

for the surety's failure to perform its promise to produce Scherer in the Greene County Common Pleas Court. See, generally, Annotation (1984), 33 A.L.R. 4th 663–699; 26 Ohio Jurisprudence 3d (1993), Criminal Law, Section 773. This prevents forfeiture of Scherer's bond and the entry of judgment against the surety.

The surety's liability on Scherer's bond should be suspended until such time as Scherer is released from his present imprisonment in Kentucky. In this regard, we note that an Ohio detainer has been lodged against Scherer at the penal institution in Kentucky where Scherer is imprisoned, and it therefore seems likely that at some future time there will be ample opportunity to return Scherer to Ohio and produce him before the Greene County Common Pleas Court. See 8 American Jurisprudence 2d (1980), Bail and Recognizance, Section 192.

The assignment of error is sustained. The judgment of the trial court forfeiting Anthony Scherer's bond will be reversed.

*Judgment reversed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.