[Cite as *State v. Guzman*, 2020-Ohio-539.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO.  1-19-11

    v.

ROBERTO GUZMAN,

    DEFENDANT-APPELLEE.           O P I N I O N

[AMERICAN SURETY
COMPANY - APPELLANT].

Appeal from Allen County Common Pleas Court
Trial Court No. CR2015 0010

**Judgment Affirmed**

**Date of Decision:  February 18, 2020**

APPEARANCES:

    *Jason M. Flower* **for Appellant**

    *Randall L. Basinger* **for Appellee**

Case No. 1-19-11

**ZIMMERMAN, J.**

{¶1} Appellant, American Surety Company ("American Surety"), appeals the February 19, 2019 judgment entry of the Allen County Court of Common Pleas issuing a judgment of forfeiture against it in the amount of $145,000. For the reasons that follow, we affirm.

{¶2} In 2015, Guzman was convicted of one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e), a first-degree felony, and sentenced to an eight-year prison term.[1] *State v. Guzman*, 3d Dist. Allen No. 1-16-27, 2017-Ohio-682, ¶ 2, 3. As relevant to this appeal, after the trial court set his bail at $100,000, Guzman posted a $100,000 surety bond, which was issued on May 4, 2015 by American Surety, through Scott Allen Hunter ("Hunter"), d.b.a. Erie Shore Bail Bonds ("Erie Shore"), as attorney in fact for America Surety. *Id.* at ¶ 2; (Doc. No. 63). After Guzman was sentenced, the trial court set Guzman's bail at $150,000 pending disposition of his case on review. (Doc. No. 76). To secure his release, Guzman posted a $50,000 surety bond, which was issued on July 29, 2015 by American Surety, through Erie Shore, in addition to the $100,000 surety bond already posted.[2] *Guzman*, 2017-Ohio-682, at ¶ 2; (Doc. No. 76). After Guzman

---

[1] This court recited much of the factual and procedural background of this case in previous appeals, and we will not duplicate those efforts here. *State v. Guzman*, 3d Dist. Allen No. 1-16-27, 2017-Ohio-682; *State v. Guzman*, 3d Dist. Allen No. 1-18-21, 2018-Ohio-4470.

[2] Although unclear, the signature on the $50,000 bond posted on July 29, 2015 does not appear to be the signature (as it appears elsewhere in the record) of Hunter.

-2-

failed to appear, the trial court ordered Guzman's appeal bond be revoked. *Guzman*, 2017-Ohio-682, at ¶ 4. Later, the trial court ordered Guzman's bond forfeited and, after a show-cause hearing, entered a judgment against Hunter and Erie Shore in the amount of $150,000.[3] *Id.* at ¶ 5. In 2016, the trial court ordered that $5,000 be remitted to Hunter and Erie Shore after those parties sought relief from the bond forfeiture once Guzman was apprehended, which we affirmed in 2017. *Id.* at ¶ 6, 15.

{¶3} In 2018, the trial court issued a nunc pro tunc entry adding American Surety as a party to judgment of forfeiture against Hunter and Erie Shore. *State v. Guzman*, 3d Dist. Allen No. 1-18-21, 2018-Ohio-4470, ¶ 18. This court concluded that the trial court improperly issued the nunc pro tunc adding American Surety as a party and reversed the trial court's order on November 5, 2018. *Id.* at ¶ 34.

{¶4} After this court reversed the trial court's order adding American Surety as a party to its judgment of forfeiture against Hunter and Erie Shore, the State filed a motion on November 14, 2018 seeking a judgment of forfeiture against American Surety as surety on Guzman's bonds issued on May 4 and July 29, 2015. (Doc. No. 149). On November 28, 2018, American Surety filed a memorandum in opposition to the State's motion. (Doc. No. 151). After the parties exchanged further memoranda, the trial court on February 19, 2019 entered a judgment of forfeiture

---

[3] Hunter and Erie Shore did not appeal this decision.

against American Surety in the amount of $145,000. (Doc. Nos. 154, 156, 157, 158, 159).

{¶5} American Surety filed its notice of appeal on March 19, 2019 and raises two assignments of error for our review, which we discuss together. (Doc. No. 165).

### Assignment of Error No. I

**The Trial Court incorrectly held that American Surety is liable for $145,000.00 bond forfeiture related to Defendant Guzman's criminal matter by retroactively including them in the May 12, 2016 and December 21, 2015 Judgment Entries.**

### Assignment of Error No. II

**American Surety cannot be liable for $145,000.00 in bond forfeiture, as the bonds are void pursuant to Ohio Criminal Rule of Procedure 46(H), Ohio Administrative Code § 3901-1-66, and the bond paperwork itself.**

{¶6} In its first assignment of error, American Surety argues that the trial court abused its discretion by entering a "retroactive" judgment of forfeiture against it in the amount of $145,000. Further, in its second assignment of error, American Surety argues that the trial court abused its discretion by issuing a judgment of forfeiture against it because the bonds are void. Specifically, American Surety argues that the judgment is unenforceable because the bonds are void under Crim.R. 46 because the "stacking" of bonds is prohibited by the Ohio Administrative Code. In the alternative, American Surety argues that the bonds are void under Crim.R. 46 based on a breach of contract.

-4-

*Standard of Review*

{¶7} This Court reviews a trial court's bond-forfeiture decision under an abuse-of-discretion standard. *State v. Brown*, 5th Dist. Delaware No. 17-CA-32, 2018-Ohio-1047, ¶ 8, citing *State v. Green*, 9th Dist. Wayne No. 02CA0014, 2002-Ohio-5769, ¶ 11. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶8} "'Bail' is a form of security such as cash or a bond." *State v. Dye*, 5th Dist. No. 17 CA 00045, 2018-Ohio-4551, ¶ 24, citing *Black's Law Dictionary* 1335 (7th Ed.1999). "The purpose of bail is to ensure the appearance of a criminal defendant before the court at a specific time." *Id.*, citing *State v. Holmes*, 57 Ohio St.3d 11, 14 (1991) and R.C. 2937.22(A).

{¶9} "If the defendant fails to appear, there is a breach of the condition of bond and the court may declare a forfeiture of the bond unless the surety can be exonerated as provided by law." *State v. Lott*, 1st Dist. Hamilton No. C-130543, 2014-Ohio-3404, ¶ 8, citing *State v. Hughes*, 27 Ohio St.3d 19, 20 (1986) and R.C. 2937.35. "A final judgment of forfeiture in the case of a recognizance surety bond has two steps: an adjudication of bail forfeiture under R.C. 2937.35 and a bond

forfeiture show cause hearing under R.C. 2937.36." *Youngstown v. Edmonds*, 7th Dist. Mahoning No. 17 MA 0126, 2018-Ohio-3976, ¶ 13.

{¶10} R.C. 2937.36 governs forfeiture proceedings and requires the trial court to notify ("by ordinary mail at the address shown by them in their affidavits of qualification or on the record of the case") the defendant and the surety of the defendant's failure to appear and the trial court's declaration of the forfeiture within 15 days of the trial court's order of forfeiture. R.C. 2937.36(C). After a recognizance is declared forfeited by a trial court, the defendant and the surety must show cause (between 45 and 60 days of the date of the mailing notice) "why judgment should not be entered against each of them for the penalty stated in the recognizance." *Id.* "When good cause is not shown, the trial court must enter a judgement against them in an amount which does not exceed the face of the bond." *Id.*

{¶11} Before addressing whether the trial court abused its discretion by entering judgment of forfeiture against it on the bonds, we must first address American Surety's arguments that the bonds are void under Crim.R. 46 because Ohio Adm.Code 3901-1-66 prohibits the "stacking" of bonds or because the bond contract was breached when the bonds were stacked.

{¶12} Crim.R. 46 guides a trial court's decision on the type, amount, and conditions of a defendant's bail. After considering the factors under Crim.R. 46(C),

a trial court may impose an amount of bail in one of the types described in Crim.R. 46(A). *See State v. Dukes*, 8th Dist. Cuyahoga No. 103303, 2015-Ohio-5153, ¶ 10. "'One of the permissible forms of bail is "recognizance," which is a "written undertaking by one or more persons to forfeit the sum of money set by the court or magistrate, if the accused is in default for appearance."'" *State v. Urch*, 11th Dist. Ashtabula No. 2019-A-0034, 2019-Ohio-3996, ¶ 17, quoting *State v. Berry*, 12th Dist. Clermont No. CA2013-11-084, 2014-Ohio-2715, ¶ 9, quoting R.C. 2937.22(A)(3).

{¶13} Under Crim.R. 46, "'[o]ne form of a recognizance is a surety bond.'" *Id.*, quoting *Berry* at ¶ 9, citing R.C. 2937.281 and Crim.R. 46(A)(3). "A 'surety bail bond is 'a court accepted bond instrument from a licensed insurance company issued for or on behalf of an incarcerated person held under criminal charges.'"[4] *State ex rel. Sylvester v. Neal*, 140 Ohio St.3d 47, 2014-Ohio-2926, ¶ 17, quoting Ohio Adm.Code 3901-1-66(C)(3). A surety-bond "agreement is backed by an insurance company contract that is signed by one or more persons and the bond agent on behalf of the insurance company." Ohio Department of Insurance, *Surety Bail Bond*, https://insurance.ohio.gov/wps/portal/gov/odi/about-us/divisions/agent-licensing/resources/surety-bail-bond (accessed Jan. 15, 2020). "A surety's

---

[4] A "surety" is "an insurer that agrees to be responsible for the fulfillment of the obligation of a principal if the principal fails to fulfill that obligation." R.C. 3905.83(C). An "insurer" means any domestic, foreign, or alien insurance company that has been issued a certificate of authority by the superintendent of insurance to transact surety business in this state." R.C. 3905.83(A).

recognizance bond is a contract between the surety and the state whereby the state agrees to release the defendant into the surety's custody and the surety agrees to ensure the defendant is present in court on the appearance date." *Dye*, 2018-Ohio-4551, at ¶ 25, citing *Lott*, 2014-Ohio-3404, at ¶ 8 and *State v. Scherer*, 108 Ohio App.3d 586, 591 (2d Dist.1995).

{¶14} Once the accused posts the amount and type of bail set by the trial court, Crim.R. 46 authorizes the trial court to release the accused on the conditions imposed by the trial court in accordance with Crim.R. 46(B).     Under Crim.R. 46(H), "the same bond shall continue until the return of a verdict or the acceptance of a guilty plea" unless otherwise ordered by the trial court under Crim.R. 46(E) or if application is made by the surety for discharge. *See Gaines v. Wasylyshyn*, 6th Dist. Wood No. WD-08-040, 2008-Ohio-2991, ¶ 10. Crim.R. 46(E) permits a trial court (at any time) to amend the type, amount or conditions of bail. *See Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, ¶ 68-69.

{¶15} "The right to bail *after* sentencing in felony cases exists by virtue of R.C. 2953.09, App.R. 8, and Crim.R. 46." (Emphasis added.) *State v. Harvey*, 6th Dist. Erie No. E-08-009, 2009-Ohio-1534, ¶ 32 (Skow, P.J., concurring). Specifically, "R.C. 2953.09(A)(2)(a) provides that a court may grant bail pending appeal consistent with App.R. 8 and Crim.R. 46." *Id.* When granting bail pending appeal, Crim.R. 46(H) permits a trial court to continue "the same bond" "pending

sentence or disposition of the case on review." Crim.R. 46(H) further provides that "[a]ny provision of a bond or similar instrument that is contrary to this rule is void."

{¶16} "The release of an accused after conviction and pending appeal is not a matter of right but a question to be resolved by an exercise of the sound discretion of the court." *State v. Ogle*, 4th Dist. Hocking No. 11CA29, 2013-Ohio-3420, ¶ 55. *See Harvey* at ¶ 32 (Skow, P.J., concurring), quoting *State ex rel. Pirman v. Money*, 69 Ohio St.3d 591, 594-595 (1994), and citing *Coleman v. McGettrick*, 2 Ohio St.2d 177, 179 (1965). Not only is the decision to release an accused after conviction and pending appeal reserved to the discretion of the trial court, but "'[a] trial court has broad discretion to set bail in an amount necessary to ensure that the accused will appear at all subsequent stages of the proceedings.'" *State v. Patterson*, 3d Dist. Hancock No. 5-11-15, 2012-Ohio-2839, ¶ 14, quoting *State v. Vaughn*, 106 Ohio App.3d 775, 787 (12th Dist.1995), citing *Bland v. Holden*, 21 Ohio St.2d 238, 239 (1970). Accordingly, a trial court's decision to release an accused after conviction and pending appeal, and the trial court's decision on the amount of the accused's bail, will not be reversed so long as the trial court's decisions are not unreasonable, arbitrary, or unconscionable. *See Ogle* at ¶ 55; *Patterson* at ¶ 14, citing *State v. Thomas*, 8th Dist. Cuyahoga No. 89583, 2007-Ohio-1692, ¶ 8.

{¶17} On appeal, American Surety contends that the bonds are void under Crim.R. 46(H) because Ohio Adm.Code 3901-1-66(D) prohibits the stacking of

bonds and because Ohio Adm.Code 3901-1-66(E)(2) permits "[o]nly one power of attorney [to] be submitted per bond." American Surety's argument is without merit. Ohio Adm.Code 3901-1-66 does not govern a trial court's authority to set bail. That is, Ohio courts are not governed by the administrative rules promulgated by administrative agencies—the Department of Insurance in this case. *See State ex rel. Sylvester*, 140 Ohio St.3d 47, 2014-Ohio-2926, at ¶ 17; *Miller v. Sts. Peter & Paul School*, 126 Ohio App.3d 762, 764 (11th Dist.1998); R.C. 3905.95 and 3901.041. *See also Brookville Equip. Corp. v. Cincinnati*, 1st Dist. Hamilton No. C-120434, 2012-Ohio-3648, ¶ 18 (noting that "an administrative rule that conflicts with a legislative enactment is invalid"), citing *Nestle R & D Ctr., Inc. v. Levin*, 122 Ohio St.3d 22, 2009-Ohio-1929, ¶ 40; *State v. Ventura*, 1st Dist. Hamilton No. C-150495, 2016-Ohio-5151, ¶ 24 (concluding that local rules promulgated under the Rules of Superintendence "are strictly internal administrative guidelines that are not intended to function as rules of practice and procedure, and therefore, they do not bestow or alter the basic substantive rights of criminal defendants").

{¶18} Indeed, Ohio Adm.Code 3901-1-66 states that "[t]he purpose of [the] rule is to establish criteria for surety bail bond agent conduct." Ohio Adm.Code 3901-1-66(A). Further, the language used in Ohio Adm.Code 3901-1-66(D) and (E) also prescribes the conduct of a surety bail bond agent. Specifically, Ohio Adm.Code 3901-1-66(D) provides, "A *surety bail bond agent* shall not submit more

than one power of attorney for any single bond, charge or charges, as is assigned a number by a court of proper jurisdiction." (Emphasis added.) Ohio Adm.Code 3901-1-66(D). In addition, Ohio Adm.Code 3901-1-66(E) describes the conduct of a surety bail bond agent when "[s]ubmitting powers and bonds."

{¶19} A surety bail bond agent's violation of an Ohio Administrative Rule does not render a bail bond void under Crim.R. 46—and there is no evidence in the record that the trial court *required* the surety bail bond agent to act in contradiction to any rule applicable to his license. Instead, a trial court's decision to set bail is governed by R.C. Chapter 2937 and Crim.R. 46. There is no such stacking prohibition in R.C. Chapter 2937 or Crim.R. 46. Rather, because decisions regarding the release of an accused pending appeal and the amount of bail necessary to ensure the defendant's appearance are within the trial court's discretion, the decision to accept "stacked" bonds or multiple powers of attorney per bond also rests with the trial court's discretion.

{¶20} Before we address American Surety's argument that the bonds are void based on a breach of contract, we must address American Surety's argument that it is also relieved from liability because the trial court "revoked" Guzman's $100,000 bond. At Guzman's sentencing hearing and in its sentencing entry, the trial court stated that Guzman's bond was "revoked." (*See* July 27, 2015 Tr. at 15); (Doc. No. 76). Specifically, in its sentencing entry, the trial court stated that "the

bond as previously set is hereby revoked and an appellate bond of $150,000 cash or surety is set." (Doc. No. 76). That the trial court stated that it "revoked" the previously set $100,000 bond did not *release* American Surety from liability.

**{¶21}** R.C. 2937.40 provides for the release of bail and sureties. That statute provides, in relevant part:

> (A) Bail of any type that is deposited under sections 2937.22 to 2937.45 of the Revised Code or Criminal Rule 46 by a person other than the accused shall be discharged and released, and sureties on recognizances shall be released, in any of the following ways:
>
> (1) When a surety on a recognizance or the depositor of cash or securities as bail for an accused desires to surrender the accused before the appearance date, the surety is discharged from further responsibility or the deposit is redeemed in either of the following ways:
>
> (a) By delivery of the accused into open court;
>
> (b) When, on the written request of the surety or depositor, the clerk of the court to which recognizance is returnable or in which deposit is made issues to the sheriff a warrant for the arrest of the accused and the sheriff indicates on the return that he holds the accused in his jail.
>
> (2) By appearance of the accused in accordance with the terms of the recognizance or deposit and the entry of judgment by the court or magistrate;
>
> (3) By payment into court, after default, of the sum fixed in the recognizance or the sum fixed in the order of forfeiture, if it is less.

R.C. 2937.40(A).

**{¶22}** At the time that the trial court imposed the $150,000 bail, none of the conditions instigating the release of the bail and sureties addressed under R.C.

2937.40 were present. *See State v. Stevens*, 30 Ohio St.3d 25, 28 (1987); *State v. Hoping*s, 6th Dist. Lucas No. L-07-1061, 2008-Ohio-375, ¶ 9. *See also State v. Barnes*, 6th Dist. Sandusky No. S-10-025, 2011-Ohio-799, ¶ 28; *Toledo v. Gaston*, 188 Ohio App.3d 241, 2010-Ohio-3217, ¶ 24 (6th Dist.). Indeed, Hunter testified at the remittance hearing that he took no steps to discharge the original bond. (Apr. 18, 2016 Tr. at 43). Likewise, there is no evidence in the record that American Surety took any steps to release the $100,000 bond. Accordingly, because American Surety did not apply to the trial court for a discharge of its bond under R.C. 2937.40 or Crim.R. 46(H), it retained its agency relationship with Guzman and the bond remained in effect. *See State v. Lee*, 9th Dist. Lorain No. 11CA010083, 2012-Ohio-4329, ¶ 20 (concluding that Lee's bond remained in effect and the surety retained its agency relationship with Lee because the surety "did not apply to the trial court for discharge of its bond pursuant to Crim.R. 46(H) and R.C. 2937.40"). *See also Stevens* at 28 ("Here, the trial court made a journal entry setting forth the order that the same bond would continue as to the defendant. If the surety had been doing its job in following the progress of defendant's case, it would have been fully aware of defendant's plea and the fact that the same bond was continued.").

{¶23} Furthermore, because the original bond remained in effect, the trial court's statement that Guzman's original bond was revoked is inconsequential. Rather, the trial court was exercising its discretion to continue Guzman's bond

pending the disposition of his case on review by amending the amount of his bond as it is permitted to do. *See State v. Hoping*s, 6th Dist. Lucas No. L-07-1061, 2008-Ohio-375, ¶ 9 ("Sureties are given constructive notice of a continuation of bond after a guilty plea or conviction by way of the court's judgment entry, and are obligated to remain informed of the status of its principle's case."), citing *Stevens* at 28 ("The fact remains that the defendant was released to the surety as a continuance of the original imprisonment. As part of its agency relationship with the defendant, the surety was obligated to remain informed of the status of the defendant's case.").

{¶24} Turning to American Surety's argument that the bonds are void based on a breach of contract, we likewise reject its argument. Here, American Surety contends that the bonds are void because they were improperly combined in violation of their express prohibition against "stacking." Specifically, in support of its argument, American Surety directs us the limiting language on the face of the bonds stating that "[t]his power is void if * * * used in any combination with other powers of attorney of this company or any other company to obtain the release of the defendant named below or to satisfy any bond requirement in excess of the stated face amount of this power." (Doc. Nos. 63, 77).

{¶25} Notwithstanding that language, American Surety is not relieved from liability. American Surety authorized Hunter (d.b.a. Erie Shore) to act as its attorney

in fact to issue bail bonds on its behalf. "[I]n contract law, an agent's authority to contract on behalf of its principal is ordinarily limited to the scope of the authority granted by the principal." *State v. Billingsley*, 133 Ohio St.3d 277, 2012-Ohio-4307, ¶ 26. Generally, "'an agent cannot bind his principal to a contract entered into by the agent in excess or in derogation of his authority.'" *Master Consol. Corp. v. Bancohio Nat. Bank*, 2d Dist. Montgomery No. 11778, 1990 WL 65666, *11 (May 17, 1990), quoting *Meyer v. Klensch*, 14 Ohio App. 4, 6 (1st Dist.1961). However, "[i]f a principal is not bound by a contract because it was entered into outside the agent's scope of authority, the principal may still be bound by the contract under the theories of apparent agency and ratification." *Park View Fed. Sav. Bank v. Willo Tree Dev., Inc.*, 11th Dist. Geauga No. 2000-G-2309, 2001 WL 1560930, *3 (Dec. 7, 2001), citing *Meyer* at *6.

{¶26} In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show:

> (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Simmons v. Extendicare Health Servs., Inc.*, 5th Dist. Delaware No. 15 CAE 12 0095, 2016-Ohio-4831, ¶ 16, citing *Master Consol. Corp.* at syllabus. "''The principal is responsible for the agent's acts only when the principal has clothed the

agent with apparent authority and not when the agent's own conduct has created the apparent authority.'"'" *Id.* at ¶ 17, quoting *Primmer v. Healthcare Industries Corp.*, 4th Dist. Athens No. 14CA29, 2015-Ohio-4104, ¶ 26, quoting *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, ¶ 41.

{¶27} On the other hand, "[a] principal ratifies the unauthorized act of his agent if the 'principal, with full knowledge of the facts, conducts himself in a way which manifests his intention to approve an earlier act performed by his agent which did not bind him.'" *Bailey v. Midwestern Ent., Inc.*, 103 Ohio App.3d 181, 185 (10th Dist.1995), quoting *Karat Gold Imports, Inc. v. United Parcel Serv., Inc.*, 62 Ohio App.3d 604, 611 (8th Dist.1989). *See also State ex rel. Riley Const. Co. v. E. Liverpool City School Dist. Bd. of Ed.*, 10 Ohio St.2d 25, 29 (1967) ("It is well established that a principal may ratify the acts of his agent performed beyond the agent's authority, and such ratification extends back to the doing of the unauthorized act by the agent and binds the principal from that time."); *Rambacher v. Staton*, 4th Dist. Lawrence No. 1335, 1979 WL 206868, *2 (Oct. 12, 1979) (discussing that, under "the doctrine of ratification Acts performed by an agent beyond the scope of his authority may be ratified by the principal; if he ratifies such unauthorized acts, he is bound by them as fully as if he originally authorized them. The principal not only becomes entitled to all the benefits of acts he ratified, he assumes the responsibility for the associated obligations"). Even slight acts of ratification are

sufficient to bind a principal to the contract. *Davis v. The May Dept. Stores Co.*, 9th Dist. Summit No. 20396, 2001 WL 1148054, *7 (Sept. 26, 2001), citing *Saberton v. Greenwald*, 146 Ohio St. 414, 430 (1946) and *Williams v. Hyatt Legal Servs.*, 9th Dist. Summit No. 14235, 1990 WL 28113, *4 (Mar. 14, 1990). "Such conduct by the principal can be the failure to repudiate the transaction under circumstances where the principal would naturally be expected to assert his position." *Chevrolet v. Calhoun*, 10th Dist. Franklin No. 03AP-816, 2004-Ohio-1006, ¶ 15, citing *Developers Three v. Nationwide Ins. Co.*, 10th Dist. Franklin No. 83AP-476, 1985 WL 9817, *3 (Jan. 15, 1985).

{¶28} Based on the specific facts and circumstances of this case, we conclude that, although Hunter/Erie Shore exceeded the scope of Hunter/Erie Shore's actual authority, American Surety remains liable under the doctrine of ratification. At the remittance hearing, Hunter testified that he contacted American Surety at the time he issued the bonds in this case. (Apr. 18, 2016 Tr. at 54). He further testified that American Surety was aware of the status of Guzman's case because it "receive[d] everything that [he] receive[d]." (*Id.*). Therefore, because sureties are expected to remain informed of the status of the defendant's case, and because Hunter testified that American Surety had actual knowledge of the status of the case, there is sufficient evidence that American Surety was aware of Hunter/Erie Shore's execution of the second bond.

{¶29} There is also sufficient evidence demonstrating that American Surety is bound by the contract through ratification of Hunter/Erie Shore's conduct. That is, the record reflects circumstances under which American Surety would naturally have been expected to assert its position. Indeed, because Hunter/Erie Shore executed the second bond on July 29, 2015, American Surety had over two months to apprise itself of the status of Guzman's case and repudiate Hunter/Erie Shore's execution of the second bond before the trial court issued the order revoking Guzman's bond on October 7, 2015. (*See* Doc. Nos. 77, 80). American Surety did not repudiate Hunter/Erie Shore's execution of the second bond.

{¶30} Moreover, American Surety had further opportunity to repudiate its liability at the forfeiture hearing, the show-cause hearing, or even the remittance hearing. Importantly, it did not appear. Likewise, American Surety did not notify the trial court that it repudiated its liability in response to the trial court's declaration of forfeiture, judgment against Hunter/Erie Shore, or entry remitting $5,000 to Hunter/Erie Shore. Simply, American Surety did nothing. At the remittance hearing, Hunter testified that he had been in contact with American Surety's underwriter regarding the $150,000 judgment and that American Surety "cautioned [him] to file the motion to be relieved * * * from the payment." (Apr. 18, 2016 Tr. at 54). According to Hunter, as of the date of the remittance hearing, American Surety was "covering the one hundred fifty thousand dollars" but was "waiting to

see what the conclusion to th[e] case [would] be" before proceeding with the request for payment. (*Id.* at 55).

{¶31} Further evidence of American Surety's knowledge of Hunter/Erie Shore's conduct and its ratification of that conduct is Guzman's premium payments. At the remittance hearing, Hunter testified that he collects premium payments from clients because he has to pay American Surety "a premium for every bond that [he] write[s]" and that he collected Guzman's bail-bond premium payments. (Apr. 18, 2016 Tr. at 10, 13-14, 20, 22, 47). Yet, there is no evidence in the record that Hunter failed to remit the premium that he owed American Surety—that is, there is no evidence in the record that American Surety terminated its relationship with Hunter for the failure to remit premium payments or that American Surety refused to tender payment in this case because Hunter failed to remit the premium. (*See, e.g., id.* at 14); (Doc. No. 152). Accordingly, we conclude that, even if Hunter/Erie Shore exceeded the scope of the power of attorney, there is sufficient evidence that American Surety knew that Hunter/Erie Shore issued the second bond and further ratified Hunter/Erie Shore's conduct. Therefore, American Surety remains liable on the contract and the bonds are not void for breach of contract.

{¶32} Because we have determined that the bonds are not void, we now turn to American Surety's argument that it cannot be liable for the $145,000 judgment because the trial court abused its discretion by retroactively applying its judgment

against Hunter and Erie Shore. American Surety's argument is misplaced. The trial court did not abuse its discretion by entering a judgment of forfeiture against American Surety in the amount of $145,000 because it complied with the requirements of R.C. 2937.36(C). *See State v. Worley*, 5th Dist. Licking No. 2011 CA 0067, 2012-Ohio-484, ¶ 19.

{¶33} Here, the trial court notified American Surety that Guzman failed to appear in court; that the bond had been forfeited; and that a show-cause hearing was to be held before the trial court on December 21, 2015. (Doc. Nos. 87, 88, 90, 91, 92). American Surety chose not to appear at any hearing—namely, it chose not to appear at the show-cause hearing despite being provided notice as required under R.C. 2937.36(C). Moreover, American Surety advances no argument that the trial court failed to adhere to the principles under R.C. 2937.36(C). *Compare State v. Zepeda-Ramires*, 9th Dist. Lorain No. 12CA010275, 2013-Ohio-1224, ¶ 8-9 (noting that the surety "made no allegation that they failed to receive the notice[s] or that they were otherwise unaware of the hearing[s]" and that they "did not attend" the hearings). Therefore, we conclude that the trial court did not abuse its discretion by issuing a judgment of forfeiture against American Surety in the amount of $145,000. *See id.* at ¶ 11.

{¶34} American Surety's assignments of error are overruled.

**{¶35}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**