[Cite as *State v. Harvey*, 2023-Ohio-1614.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO.  1-22-43

    v.

JAQUAVEIUS E. HARVEY,

                                O P I N I O N

    DEFENDANT-APPELLEE,

[CASTLE BAIL BONDS - APPELLANT].

---

Appeal from Allen County Common Pleas Court
Trial Court No.  CR 2020 0383

**Judgment Affirmed**

Date of Decision:  May 15, 2023

---

APPEARANCES:

    *April F. Campbell* for Appellant

    *John R. Willamowski, Jr.* for Appellee, State of Ohio

**EPLEY, J.**

{¶1} Appellant, Castle Bail Bonds, surety for Jaquaveius E. Harvey, appeals from the judgment of the Allen County Court of Common Pleas after the court entered a $250,000 forfeiture judgment against it because Harvey failed to appear for his felony case. For the reasons that follow, the judgment of the court will be affirmed.

## I.     Facts and Procedural History

{¶2} In October 2020, Harvey was charged with multiple serious drug crimes including trafficking in heroin and engaging in a pattern of corrupt activity. He entered a plea of not guilty and bond was set at $250,000. A few months later, Castle Bail Bonds ("Castle") became surety for Harvey, posting bond on his behalf. The case proceeded with many hearings and motions, until Harvey failed to appear for his final pre-trial hearing on September 17, 2021. A bench warrant was issued on September 20, 2021.

{¶3} On January 10, 2022, after months of Harvey being unaccounted for, the State filed a motion to forfeit bond. On January 27, Castle filed a motion to be released from the bond, citing "new" charges (the charges were filed in April of 2021, but Castle claimed to have been unaware of them until recently) that amounted to a violation of the bond agreement. On February 15, 2022, the court heard the State's motion and ordered the entire bond forfeited. It further denied

Castle's request to be removed as surety and ordered Castle to show cause on or before April 12, 2022, why judgment should not be entered against it.

{¶4} At the April 12 show cause hearing, the court heard testimony from Dana Barnhart, an agent and recovery officer at Castle. She testified that she had spent "countless hours between Lima, Ohio and Fort Wayne, Indiana, trying to recover [Harvey]." Hearing Tr. at 4-5. She also explained that she had hired outside recover agents to help in the search. Despite the time and effort, agents had been unsuccessful in the quest to locate Harvey. Barnhart also testified that she had tried to get the US Marshalls to help in the search, but they allegedly told her that they needed an invite from the Allen County Prosecutor's Office to assist. She did admit, however, that she had not reached out to the West Ohio Crime Task Force or the prosecutor's office for assistance.

{¶5} At the close of the hearing, the court granted a 45-day extension, and suggested reaching out to the assistant prosecutor assigned to drug cases because she would have useful contacts with law enforcement who would also be interested in getting Harvey off the streets. The trial court also noted that it had expanded the warrant pick-up radius to "nationwide."

{¶6} A second show cause hearing took place on May 27, 2022. During that proceeding, the court heard from Barnhart again, and from Matthew King, the director of recovery for Dawgtown, Inc., another bail bonds enterprise looking for

Harvey on another case. King testified that while no one had been able to capture Harvey, he had spent more than $18,000 looking for him. He also told the court that he thinks he knows where Harvey is, and on multiple occasions, has been just minutes too late in recovery efforts. He stated, "I am very confident * * * that Mr. Harvey is still here in Lima and is bouncing around from several different addresses." Hearing Tr. at 18.

{¶7} Barnhart also testified on behalf of Castle. She complained that the prosecutor's office had been too busy to help, but the Marshalls were actively looking for Harvey. She stated that she has physically seen him but has been unable to capture him to this point.

{¶8} At the close of testimony, the court granted one last 45-day extension to Castle but made it clear that this was the last shot – they had until July 11 at 7:30 to recover Harvey. There would be no more extensions. When Harvey's whereabouts were still unknown on July 11, the court held that Castle had not shown good cause as to why judgment should not be entered, and ordered the bond forfeited in the amount of $250,000.

{¶9} Castle has filed a timely appeal.

## II.    Bond Forfeiture

**{¶10}** In its lone assignment of error, Castle argues that the trial court abused its discretion when it was ordered to pay the $250,000 bond forfeiture order. We disagree.

**{¶11}** "Bail bonds are contracts between the surety and the state." *State v. Lott*, 2014-Ohio-3404, 17 N.E.3d 1167, ¶ 8 (1st Dist.). The surety agrees to ensure that the defendant appears in court and the state agrees to release the defendant into the custody of the surety. *Id.* If a defendant fails to appear for court, there is a breach of the condition of bond and a trial court may declare a forfeiture of it unless the surety can be exonerated as provided by law. *State v. Guzman*, 2020-Ohio-539, 152 N.E.3d 412, ¶ 9 (3d Dist.); *State v. Hughes*, 27 Ohio St.3d 19, 20, 501 N.E.2d 622 (1986). A final judgment of forfeiture in the case of a recognizance surety bond consists of two steps: (1) adjudication of bail forfeiture pursuant to R.C. 2937.35, and (2) a forfeiture show cause hearing under R.C. 2937.36. *Id.*

**{¶12}** According to R.C. 2937.36, a trial court must notify ("by ordinary mail at the address shown by them in their affidavits of qualification or on the record of the case") the defendant and the defendant's surety of the defendant's failure to appear and the court's declaration of the forfeiture within 15 days of the order. R.C. 2937.36(C). After recognizance is declared forfeited, the surety and defendant must show cause (between 45 and 60 days of the date of the mailing notice) why judgment

should not be entered against them for the penalty stated in the recognizance. R.C. 2937.36(C). "When good cause is not shown, the trial court must enter judgment against them in an amount which does not exceed the face of the bond." *Id*. A surety can be exonerated if good cause "by production of the body of the accused or otherwise" is shown. R.C. 2937.36(C).

{¶13} An appeals court reviews a bond forfeiture decision for an abuse of discretion. *Guzman* at ¶ 7. *See also State v. Thornton*, 2d Dist. Montgomery No. 20963, 2006-Ohio-786, ¶ 13. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

{¶14} Castle's main argument is that Harvey made his capture impossible during the timeframe given by the trial court. It argues that Harvey was being protected by a network of people including the mother of some of his children and a criminal syndicate known as SKU, a local group designed to protect people who break the law. Appellant's Brief at 7.

{¶15} To make in-roads against the forces attempting to hide Harvey, Dana Barnhart and Matthew King testified to the lengths the bail bond companies went to capture him. Barnhart noted that she had spent "countless hours" looking for Harvey in both Ohio and Indiana, had hired outside investigators, and recounted that on several occasions she had seen Harvey but was unable to get a hold of him. King

stated that he had spent more than $18,000 on the search, but lamented the difficulty of the job because of Harvey's associates' work in hiding him. Both Barnhart and King told the court that they had gotten warnings from Harvey and others, threatening their safety if the search continued.

{¶16} A surety bond is a contract and is subject to the rules governing performance of contracts. *State v. Scherer*, 108 Ohio App.3d 586, 591, 671 N.E.2d 545 (2d Dist.1995). "The common law tests for impossibility of performance applicable to a bond forfeiture are prevention by an act of God, the act of the obligee, or the act of law." *State v. Johnson*, 2d Dist. Montgomery No. 21074, 2006-Ohio-417, ¶ 20; *see Scherer* at 591 ("According to the rule concerning impossibility of performance, a promisor may be excused from an obligation to the promisee when the performance promised is rendered impossible by operation of law, if that impossibility was not foreseeable to the promisor."). In this case, it is clear that Harvey's capture was not impossible. The presentation of his "body" in court was not prevented by an act of God – he was not killed in a tornado or other natural disaster, nor was it prevented by an act of law – and he was not incarcerated in another jurisdiction that refused extradition (*See Scherer* at 595). Further, unlike Castle's contention, the State did not hinder its ability to capture Harvey. In fact, the prosecutor's office got the US Marshalls involved in the hunt for Harvey and the

trial court extended the pick-up radius on the warrant. He was wanted on many serious felonies spanning multiple cases.

{¶17} There is no question that Harvey (and his compatriots) made it difficult for Castle, but the "escape of a defendant is the business risk of a bail surety. It is precisely the situation which a surety guarantees against." *Scherer* at 593; *State v. Hughes*, 27 Ohio St.3d 19, 22, 501 N.E.2d 622 (1986). "Sureties make calculated business judgments in determining to insure a defendant's appearance. As part of this evaluation of risk, it is foreseeable that a person would flee[.]" *State v. Jackson*, 1st Dist. Hamilton No. C-200153, 2021-Ohio-1646, ¶ 18, vacated on other grounds. Castle must have known that Harvey was a flight risk (especially with the serious charges levied against him) and chose to act as surety anyway. Further, the testimony presented at the hearings, especially the May 27 hearing, belies the assertion that Harvey's capture was impossible as both Barnhart and King stated that they were close to bringing him in. Hearing Tr. at 25.

{¶18} Finally, it must be noted that Castle had at least constructive knowledge that Harvey was on the run since September 20, 2021 (when the court issued the bench warrant after he failed to appear for the final pre-trial hearing), but waited until February to start its hunt. Then, the trial court granted extensions on April 12, 2022, and again on May 27, 2022, until it finally ordered the bond forfeited on July 12. Based on the leeway granted by the court and the legal analysis above,

we conclude that the trial court did not abuse its discretion when it ordered the bond forfeited. Castle's assignment of error is overruled.

### III. Conclusion

{¶19} The judgment of the trial court is affirmed.

*Judgment Affirmed*

**MILLER, P.J. and ZIMMERMAN, J., concur.**

**/jlr**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**