[Cite as *State v. McKinney*, 2021-Ohio-3108.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 20CA17 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| KERTEZ McKINNEY, | : | |
| | : | **RELEASED: 09/03/2021** |
| Defendant. | : | |

_____

APPEARANCES:

Judy C. Woldford, Pickaway County Prosecuting Attorney and Jayme Hartley Fountain, Assistant Pickaway County Prosecutor, Circleville, Ohio, for Appellee.

Roger Soroko and Joshua Bedtelyon, Columbus, Ohio, for Appellant.

_____

Wilkin, J.

{¶1} This is an appeal from a decision of the Pickaway County Court of Common Pleas that denied appellant, Chuck Brown Bail Bonds', motion to release its liability for the bond it posted on behalf of defendant Kertez McKinney. Appellant asserts two assignments of error: (1) the trial court erred in denying appellant's motion to release liability for McKinney's bond when the appellant fulfilled the obligation on the bond in compliance with the law, and (2) the trial court erred in denying appellant's motion to release liability for McKinney's bond when the court failed to comply with statutory requirements. After reviewing appellant's arguments, the applicable law, and the record, we overrule its assignments of error and affirm the trial court's judgment.

## BACKGROUND

{¶2} The state charged McKinney of tampering with evidence, possession of cocaine, and trafficking in cocaine.  On October 25, 2019, the trial court required McKinney to "post a bond in the sum of $10,000 in cash, property or surety."  On that same day, appellant posted a "bail bond" in the amount of $10,000 on McKinney's behalf, which prohibited him from leaving the state. McKinney failed to appear for his June 12, 2020 pre-trial conference. Consequently, the trial court executed an entry issuing a capias for McKinney's arrest and ordering his bond to "be revoked and forfeited[.]" The court set a bond-forfeiture hearing for August 12, 2020.

{¶3} Appellant moved to continue the August 12, 2020 forfeiture hearing for 60 days to allow it additional time to locate McKinney.  The trial court granted the motion and set the hearing for October 14, 2020.  McKinney failed to appear on October 14, 2020, and appellant moved for another continuance, which the court granted, giving appellant an additional 30 days to locate him.  The court rescheduled the forfeiture hearing for November 18, 2020.

{¶4} On November 4, 2020, two weeks before the scheduled forfeiture hearing, appellant filed a motion to release its liability for the $10,000 bond it posted on McKinney's behalf.  Appellant argued that McKinney was arrested and jailed in Macomb County, Michigan, September 11, 2020 through September 13, 2020.  Appellant alleged that the Pickaway County Sheriff's Office "was notified that [McKinney] was incarcerated and they could pick him up," but appellant

claims that the sheriff's office declined to pick up McKinney. Therefore, the appellant moved the court to release it from liability for McKinney's bond.

{¶5} The trial court denied appellant's motion relying on *State v. Hughes*, 27 Ohio St.3d 19, 501 N.E.2d 622 (1986), in which the Supreme Court of Ohio did not exonerate the bonding company for liability on a defendant's bond. The court stated that similar to *Hughes*, appellant was not instrumental in McKinney's capture in Michigan, and made no effort in returning appellant to Pickaway County, but instead relied on the Pickaway County Sheriff's Office to pick up McKinney from Michigan and bring him back. The court reasoned that appellant was responsible for McKinney appearing at his pre-trial hearing and it failed to meet that obligation. It is this judgment that appellant appeals, asserting two assignments of error.

## ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO RELEASE LIABILITY FOR DEFENDANT'S BOND WHEN APPELLANT FULFILLED THE OBLIGATION ON BOND IN COMPLIANCE WITH THE LAW

II.   THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO RELEASE LIABILITY FOR DEFENDANT'S BOND WHEN THE TRIAL COURT FAILED TO COMPLY WITH STATUTORY REQUIREMENTS

## ASSIGNMENT OF ERROR I

{¶6} In its first assignment of error, appellant admits that preventing the escape of a defendant is a surety's responsibility. However, appellant argues that a surety may be excused from liability for a bond if it can show good cause why it should not be held liable. Appellant claims it was never aware that

McKinney was incarcerated in Michigan in September of 2020, but the Pickaway County Sheriff's Office was aware of his incarceration. Appellant asserts that it had no legal right to take custody of McKinney from the Michigan jail, but the sheriff could have extradited him and failed to do so. Appellant essentially argues that the sheriff's failure to extradite McKinney is good cause why appellant should be released from liability for McKinney's bond. Had the sheriff extradited McKinney, he would have appeared before the trial court and appellant would have been released from liability. Alternatively, appellant argues the sheriff's office could have informed appellant of McKinney's incarceration in Michigan so appellant could have seized McKinney upon his release and returned him to Ohio, thereby satisfying its obligation on the bond.

{¶7} Appellant argues that the trial court erred in relying on *Hughes* because it is distinguishable. Appellant claims that in *Hughes,* Cuyahoga County had begun the extradition process and the bonding company could no longer do anything to get the defendant back to Cuyahoga County. Thus, it was Cuyahoga County's obligation to get the defendant back to Ohio. However, when the extradition hearing was scheduled, the defendant posted bond and fled again thereby shifting responsibility back to the bonding company to produce the defendant. Appellant contends that in this case it was the sheriff's obligation to bring McKinney back to Ohio by initiating an extradition proceeding, but it failed to do so. Unlike in *Hughes*, the responsibility to return McKinney to Ohio never reverted back to appellant; thus, appellant asserts that we should reverse the trial court's judgment denying its motion for release from liability.

{¶8} In response, the state argues that the trial court did not err in denying appellant's motion for release from liability. Appellant was responsible for securing McKinney's appearance for the June 12th pre-trial, but failed to do so. If this court held McKinney's incarceration in Michigan relieved appellant of its responsibility on the bond, then the state claims there would be no incentive for a surety to track a fugitive. Rather, a surety could simply request to be released from bond under the assumption that the defendant will be picked up in another jurisdiction and extradited, while the surety walks free. Thus, the state asserts that we should affirm the trial court's judgment denying appellant's motion for relief from liability.

Law and Analysis

{¶9} "A trial court's bond-forfeiture decision is reviewed using an abuse-of-discretion standard." *State v. Slider*, 184 Ohio App.3d 68, 919 N.E.2d 775, ¶ 10 (4th Dist.), citing *State v. Green,* 9th Dist. Wayne App. Nos. 02CA0014 through 02CA0019, 2002-Ohio-5769, ¶ 11. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶10} "Bail is security for the appearance of an accused to appear and answer to a specific criminal * * * charge in any court or before any magistrate at a specific time." R.C. 2937.22(A), *see also State v. Hughes*, 27 Ohio St.3d 19, 20, 501 N.E.2d 622 (1986). Bail can be "cash or a bond." *State v. Dye*, 2018-Ohio-4551, 122 N.E.3d 678, ¶ 24 (5th Dist.), citing Black's Law Dictionary 7th Ed.

"A surety's recognizance bond is a contract between the surety and the state whereby the state agrees to release the defendant into the surety's custody and the surety agrees to ensure the defendant is present in court on the appearance date."  *City of Youngstown v. Edmonds*, 2018-Ohio-3976, 119 N.E.3d 946, ¶ 12 (7th Dist.), citing *State v. Lott*, 2014-Ohio-3404, 17 N.E.3d 1167, ¶ 8 (1st. Dist.); *State v. Scherer*, 108 Ohio App.3d 586, 591, 671 N.E.2d 545 (2d Dist.1995).

{¶11} A surety may be exonerated from liability for a bond if it can show "good cause by production of the body of the accused or otherwise."  R.C. 2937.36(C).  Moreover, in certain circumstances "a promisor may be excused from an obligation to the promisee when the performance promised is rendered impossible by operation of law, if that impossibility was not foreseeable to the promisor."  *See Scherer*, 108 Ohio App. 3d 586, 591, 671 N.E.2d 545 (2d Dist.1995).

{¶12} Appellant relies on *Scherer* in support of its good cause argument. According to appellant, it was impossible by operation of law for it to extradite McKinney and it was not foreseeable the sheriff's office was not going to extradite him or inform it he was incarcerated in Michigan.  But this Court finds that the facts of *Scherer* are distinguishable and actually support the trial court's denial of releasing appellant from liability for McKinney's bond.  In *Scherer*, the Greene County Court of Common Pleas released the defendant prior to sentencing on bond, which required him to maintain his residence in Kentucky, and not move without giving notice to the court.  *Scherer*, 108 Ohio App.3d at

589, 671 N.E.2d 545.  When the court learned that the defendant moved without leave, it issued a warrant for his arrest.  *Id.*  The defendant was arrested in Kentucky and detained to face a probation violation for the offense he committed in Ohio.  *Id.*  Kentucky revoked the defendant's probation, and filed new charges based on another offense he committed in Kentucky.  *Id.*  Consequently, he did not appear for his sentencing in Ohio, and after a hearing, the court in Ohio issued an entry forfeiting his bond.  *Id.*

{¶13} On appeal, the surety argued Kentucky's incarceration of the defendant made its performance on the bond contract legally impossible.  *Id.* at 590.  The court of appeals recognized that a defendant voluntarily fleeing a jurisdiction and becoming incarcerated in another jurisdiction was a reasonably foreseeable event, and a surety is on notice of that possibility thereby precluding the surety from escaping liability on the defendant's bond.  *Id.* at 591.  However, because the defendant in *Scherer* had not voluntarily fled to Kentucky, but instead resided in Kentucky as a condition of his bond in Ohio, the court of appeals found that "his subsequent incarceration in Kentucky did not proximately result from any negligence of the sureties in failing to prevent his leaving Ohio." *Id.* at 594.  Therefore, the court concluded that the surety had "good cause," which excused it from being liable for the defendant's bond.  *Id.*

{¶14} In contrast, if the bond indicates that the defendant "shall not depart the jurisdiction without leave," but nevertheless illegally departs Ohio on his or her volition without leave of the court, the flight of the accused "is a business risk that the surety assumes," and a trial court does not err in forfeiting a bond under

that circumstance.  *State v. Sexton*, 132 Ohio App.3d 791, 794, 726 N.E.2d 554

(4th Dist.1999), citing *Scherer*, 108 Ohio App.3d at 593-594, 671 N.E.2d 545 (2d

Dist.1995); *see also*, *State v. Jackson*, 1st Dist. Hamilton No. C-200153, 2021-

Ohio-1646; *State v. Ohayon*, 12 Ohio App.3d 162, 467 N.E.2d 908 (8th

Dist.1983).  As explained in *Jackson*:

> Sureties make calculated business judgments in determining to insure a defendant's appearance. As a part of this evaluation of risk, it is foreseeable that a person would "flee," voluntarily leaving the state. It is also foreseeable that the fleeing defendant would commit a crime in another jurisdiction and be unable to return. Sureties have ways to reduce their risks, and undoubtedly engage in a cost-benefit analysis in deciding what protections to take as to any particular defendant.

*Jackson* at ¶ 18.

{¶15} In this case, the recognizance bond provided by appellant stated:

"DEFENDANT SHALL NOT LEAVE THE STATE OF OHIO."  Despite this

prohibition, McKinney failed to appear at his June 12, 2020 pre-trial conference,

at some point decided to leave Ohio, and was subsequently imprisoned in

Michigan on September 11, 2020 through the 13th.  Under this court's decision in

*Sexton*, we reject appellant's argument that McKinney's three-day incarceration

in Michigan was "good cause" that relieved appellant of its liability for McKinney's

bond.  As stated in *Sexton*, McKinney's decision to leave Ohio was a business

risk that appellant assumed when it posted bond on his behalf.  Moreover,

McKinney's three-day incarceration in Michigan did not occur until approximately

three months after his failure to appear at his June 12, 2020 pre-trial hearing.

And aside that brief incarceration, appellant had approximately five and one-half

months to locate and return McKinney to Ohio, but failed to do so.

{¶16} Contrary to appellant's self-serving assertion, there is no evidence in the record supporting its claim that the Pickaway County Sheriff's Office was aware that McKinney was incarcerated in Michigan in September of 2020. *See State v. Cambron*, 2020-Ohio-819, 152 N.E.3d 824, ¶ 24 (4th Dist.) (Recognizing that on appeal, we are limited to reviewing the trial court's record). More importantly, even accepting for argument sake that the sheriff's office was aware of McKinney's incarceration in Michigan, and ignoring *Sexton*, appellant has not cited any authority that would obligate the sheriff to extradite McKinney, or notify appellant of McKinney's incarceration. Therefore, we reject appellant's argument that the sheriff had a unilateral obligation to assist appellant regarding satisfaction of its bond contract.

{¶17} In conclusion, it was appellant's obligation to show good cause by delivering McKinney to the court or "otherwise," or alternatively by showing that it was impossible for it to perform on the bond contract. Appellant failed to satisfy either option. Therefore, we find that the trial court's decision denying appellant's motion for release from liability for McKinney's bond was not unreasonable, arbitrary, or unconscionable. Accordingly, we overrule appellant's first assignment of error.

## ASSIGNMENT OF ERROR II

{¶18} In his second assignment of error, appellant argues that the trial court erred in failing to provide it a hearing on the matter of the bond forfeiture. Appellant claims that the purpose of a hearing is to give the surety time to locate the defendant prior to the hearing and to avoid liability for the bond. By "failing to

provide appellant its statutory requirement of a show cause hearing,"[1] the trial court deprived "appellant a final opportunity to be heard on the matter." Appellant cites *State v. Johnson*, 2d Dist. Montgomery No. 21074, 2006-Ohio-417, for the proposition that a court must hold a hearing before rejecting a surety's claim of good cause for purposes of relieving the surety of its liability on the defendant's bond. Therefore, appellant maintains that the trial court abused its discretion by not holding a forfeiture hearing.

{¶19} In response, the state argues that R.C. 2937.26(C) requires a court to notify a surety and permit the surety to "show cause" why it cannot produce the accused, but it does not require the court to hold a hearing. The court provided appellant notice that it needed to produce McKinney or forfeit the bond in its June 23, 2020 entry. The court also provided appellant two extensions of time to locate McKinney with the last hearing date set for November 18, 2020. Additionally, the court afforded appellant more than the 45-day minimum required by R.C. 2937.26(C) to locate McKinney. Therefore, the state claims that the trial court did not abuse its discretion in not holding a forfeiture hearing, and appellant's second assignment of error should be overruled.

Law and Analysis

{¶20} As we previously set out in the first assignment of error, an abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

---

[1] Although appellant argues that the trial court failed to hold a "show cause hearing," courts refer to this as a " 'bond forfeiture hearing.' " See *State v. Clagg*, 4th Dist. Gallia No. 19CA2, 2019-Ohio-4527, ¶ 5.

**{¶21}** We begin our analysis with *Johnson*, the case relied upon by appellant. In *Johnson* the defendant failed to appear for his sentencing hearing, so the trial court issued an entry forfeiting the surety's bond, and ordered the surety to show "good cause" by April 25, 2009 why judgment should not be entered against it. *Johnson*, 2006-Ohio-417, ¶ 5. Appellant moved the court for a continuance of the defendant's sentencing hearing on the grounds the defendant was hospitalized with a serious gun-shot wound to the leg and was not a threat to leave the jurisdiction. *Id.* at ¶ 7. Without first holding a hearing, the trial court entered a judgment finding appellant did not show "good cause" why the court should not enter an adjudication of forfeiture. *Id.* at ¶ 10. On appeal, the court reversed stating in pertinent part that:

> As a general rule, when grounds for relief are portrayed in a written filing the court may grant the motion or application without a hearing, but the court errs when it denies the motion without a hearing to determine whether grounds exist. The court therefore erred when it entered judgment on the forfeiture, rejecting the grounds for good cause that the April 19, 2005 motion alleged, without a hearing.

*Id.* at ¶ 22.

**{¶22}** As we recognized in analyzing appellant's first assignment of error, R.C. 2937.36(C) addresses the procedure upon forfeiture and provides:

> Upon declaration of forfeiture, the magistrate or clerk of the court adjudging forfeiture shall proceed as follows:
>    * * *
> (C) As to recognizances the magistrate or clerk shall notify the accused and each surety within fifteen days after the declaration of the forfeiture by ordinary mail at the address shown by them in their affidavits of qualification or on the record of the case, of the default of the accused and the adjudication of forfeiture and *require each of them to show cause on or before a date certain* to be stated in the notice, and which shall be not less than forty-

five nor more than sixty days from the date of mailing notice, why judgment should not be entered against each of them for the penalty stated in the recognizance. *If good cause by production of the body of the accused or otherwise is not shown, the court or magistrate shall thereupon enter judgment against the sureties* * * *.  (Emphasis added.)

**{¶23}** "The purpose of [R.C. 2937.36(C)] is to afford due process by allowing the surety to be heard prior to the forfeiture."  *City of Univ. Heights v. Allen*, 8th Dist. Cuyahoga No. 107211, 2019-Ohio-2908, ¶ 17, *appeal not allowed sub nom. Univ. Hts. v. Allen*, 158 Ohio St. 3d 1421, 2020-Ohio-647, 140 N.E.3d 740, *reconsideration denied*, 158 Ohio St. 3d 1507, 2020-Ohio-2819, 144 N.E.3d 457.  The term "hearing" is not found in R.C. 2937.36(C), and "it is the duty of the court to give effect to the words used, not to delete words used or *insert words not used*."  (Emphasis added.) *State v. Lenegar*, 4th Dist. Vinton No. 98CA521, 1999 WL 59727, at *4, citing *Cline v. Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 97, 573 N.E.2d 77 (1991).  In a case involving the sealing of an individual's criminal record, we found that even though the applicable statute, R.C. 2953.32, required a court to "set a date for a hearing," there was no language in the statute that required the court to hold a hearing.  *State v. Clark*, 4th Dist. Athens No. 11CA8, 2011-Ohio-6354, ¶ 13.  Therefore, based on the principal " 'we are forbidden to add a nonexistent provision to the plain language of [a statute],' " we concluded that "[t]here is no requirement that a hearing must be held."  *Id.*, quoting *State ex rel. Steffen v. Court of Appeals, First Appellate Dist.,* 126 Ohio St.3d 405, 2010-Ohio-2430, 934 N.E.2d 906, ¶ 26.

**{¶24}** The statute in this case merely mandates that a surety be afforded an opportunity to "show cause" by a "date certain" that the surety has "good cause by production of the body of the accused or otherwise." Based on the plain language of R.C. 2937.36(C), we disagree with *Johnson*'s conclusion that a trial court is mandated to hold a hearing before entering judgment of forfeiture against a surety in every instance. It is important to note that we are not suggesting that courts should not hold forfeiture hearings. Most courts, including this Court and the Supreme Court of Ohio have recognized that a hearing is the typical vehicle used by courts for sureties to show good cause. *See e.g. State v. Holmes*, 57 Ohio St. 3d 11, 13, 564 N.E.2d 1066 (1991); *Slider*, 184 Ohio App. 3d 68, 2009-Ohio-4179, 919 N.E.2d 775, ¶10 (4th Dist.). Rather, we find that in limited circumstances where a surety has been afforded adequate due process to show cause why it should not be held liable for a defendant's bond, a hearing may not be necessary.

**{¶25}** In this case, the trial court initially scheduled a bond-forfeiture hearing for August 8, 2020. However, appellant filed a continuance of the hearing seeking additional time to locate McKinney, which the trial court granted and rescheduled for October 14, 2020. After failing to procure McKinney's appearance at the October hearing, appellant sought a second continuance. The court also granted this continuance, and rescheduled the bond-forfeiture hearing for November 18, 2020. Despite affording appellant approximately 5 months to locate McKinney, significantly more than the statutorily-required 45-day minimum, appellant was unable to deliver McKinney to the trial court.

**{¶26}** Finally, mere days before the "date certain" of the November 18th forfeiture hearing, appellant filed a motion seeking its release from liability for McKinney's bond arguing it had good cause for not delivering McKinney to the trial court.  Appellant has not argued on appeal that it had any further permissible arguments that it could have asserted at the hearing that it did not assert in its motion for release from liability.

**{¶27}** Considering that R.C. 2937.36(C) does not contain the word "hearing," and the particular circumstances in this case, we find that appellant was afforded more than adequate due process not only to locate McKinney, but to show good cause why it should not be held liable for McKinney's bond, even without a hearing.  Therefore, we find that the trial court's decision to issue a final entry denying appellant's motion for release from liability of McKinney's bond without first holding a forfeiture hearing was not unreasonable, arbitrary, or unconscionable.  Accordingly, because we find the trial court did not abuse its discretion, we overrule appellant's second assignment of error.

CONCLUSION

**{¶28}** Having overruled both of appellant's assignments of error, we affirm the trial court's judgment entry denying appellant's motion to release it from liability on McKinney's bond.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Abele, J:  Concur in Judgment and Opinion.

For the Court,


BY:  _____
     Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**